# Jeffrey A. Rothman
Attorney at Law
315 Broadway, Suite 200
New York, NY 10007
Tel.: (212) 227-2980; Cell: (516) 455-6873
Fax: (212) 591-6343
rothman.jeffrey@gmail.com

March 1, 2017

The Honorable Anne Y. Shields
United States Magistrate Judge
United States District Court for the
Eastern District of New York
100 Federal Plaza
Central Islip, NY 11722

    *Re:*   <u>Christopher Grief v. Nassau County, et al.</u>,
             15 Civ. 7240 (ADS) (AYS)

Dear Judge Shields:

     I, along with John Ware Upton, Esq., am counsel for Plaintiff in the above-captioned matter, and write - pursuant to permission granted by Your Honor's law clerk Ms. Casalini during a telephone conference on February 13, 2017 - to respectfully request an Order compelling production of certain discovery pursuant to Fed.R.Civ.P. 37(a)(3)(A), and requiring Defendants to pay the reasonable expenses incurred in having to make the present motion, including attorney's fees pursuant to Fed.R.Civ.P. 37(a)(5)(A).

     Unfortunately, Defendants' promises – made during the February 13, 2017 conference call with Ms. Casalini, and prior to that during a conference call between counsel for the parties held on January 25, 2017 and otherwise – to provide further discovery responses and materials in an attempt to limit the issues requiring resolution by motion have mostly gone unfulfilled, thus requiring the instant application.

**<u>None of the Individual Defendants have Provided Individualized and Verified Discovery Responses, and the Responses Provided by Opposing Counsel are Almost Entirely Evasive and Non-Responsive</u>**

     Plaintiff served Plaintiff's First Consolidated Set of Interrogatories, Requests for Production of Documents, and Request for Entry Upon Land upon Defendants by mail on August 5, 2016. See, **Exhibit 1** hereto. The County's and Sheriff Sposato's responses were thus due on September 8, 2016. Plaintiff made clear in Footnote # 1, on the first page of these discovery requests, that "[t]hese discovery requests are also directed at Correction Officer Alberto Bazante, Shield No. 2776, Correction Officer Angelo Muro, Shield No. 2175, and Correction Officer Jaret Carbone, Shield No. 2906 [who opposing counsel had identified as the John Does #s 1-3 from

the original complaint], who will soon be amended into this action as Defendants." Opposing counsel filed her appearance for all of the Defendants (including "John Doe 1, John Doe 2, and John Doe 3") on September 26, 2016 (docket # 24), and filed an Answer to the Amended Complaint on behalf of these Corrections Officers Defendants on December 19, 2016 (docket # 43).

Defendants provided us with a single "response" to our discovery requests on December 21, 2016 (**Exhibit 2** hereto), which was only signed by opposing counsel, and which did not provide individualized or verified responses from any of Officers Bazante, Muro, or Carbone, or Sheriff Sposato. We have been promised that individualized, verified responses from each of these individual Defendants would be forthcoming on multiple occasions, most recently during our call with Ms. Casalini on February 13, 2017, but they have still not been provided. The Court should thus compel them to each provide individualized, verified responses as required by Fed.R.Civ.P. 33 (b)(3) by a short date certain. *See*, e.g., Nagler v. Admiral Corp., 167 F Supp 413, 415 (SDNY 1958) ("There is no authorization either in the rules or in the orders heretofore entered for the so-called 'consolidated answers' in which the four plaintiffs jointly answer the bulk of the interrogatories. Rule 33 requires that interrogatories shall be answered 'separately and fully under oath'."). Also, as the responses are quite late, and have not been provided despite numerous broken promises that they would be forthcoming imminently, Defendants should be barred from asserting any objections when they do provide their individualized, verified responses. See, Fed.R.Civ.P. 33(b)(4) ("Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure") (emphasis added).

The single "response" to our discovery requests that we received on December 21, 2016 (**Exhibit 2** hereto) is, also, almost entirely evasive and non-responsive, and was provided exceedingly late, thus waiving Defendants' right to lodge any of the numerous boilerplate objections that they have lodged. *See*, Fed.R.Civ.P. 33(b)(4). In addition – and as the Court can see from a quick perusal of the Defendants' "responses" to Plaintiff's Interrogatories and Requests for Production of documents – Defendants did not provide substantive information in response to almost all of Plaintiff's interrogatories, and have failed to identify and / or produce entire categories of clearly discoverable documents (such as, *inter alia,* the individual Defendants' personnel / disciplinary records, documents indicating other uses of force engaged in by the individual Defendants, and the identities and photographs of the involved inmates and corrections officers[1]). Most absurdly, Defendants did not even identify the individuals who used force upon Plaintiff. Defendants' definitional quibbling (including refusing to respond because we made reference to the "Nassau County Department of Corrections" instead of referring to the "Nassau County Sheriff's Department Corrections Division") and boilerplate and inapposite objections were not lodged in good faith, and ignored the definitions provided on pages 2-5 of Plaintiff's First Consolidated Set of Interrogatories, Requests for Production of Documents, and Request for Entry Upon Land, and were plainly made in order to stonewall and avoid Defendants' duty to provide discoverable information. The County should be compelled by a

---

[1] Plaintiff is in custody, and thus photographs of the other inmates and Corrections Officers who were involved with the incident are needed even more than they normally would be in order to prepare for and take the upcoming depositions in this case.

short date certain to provide complete responses to each interrogatory and document request[2], and likewise should be barred from asserting any objections.

In the documents Defendants have provided, they have even gone so far as to redact the names and other identifying information of the other inmates[3] referenced therein, who we need to contact and / or subpoena as potential witnesses in this case. This is entirely inappropriate, and Defendants should be compelled to remove these redactions forthwith and to provide the other inmates' names, addresses, and telephone numbers (and any other information that will help us to contact them, should they not still be in the custody of Nassau County) by a short date certain.[4] *See*, e.g., Murray, III, v. Fisher, 2009 WL 2843271 at *1-3 (W.D.N.Y. August 28, 2009) (Scott, MJ) (compelling defendants - in an upstate civil rights prison case brought by a *pro se* plaintiff alleging deprivation of his religious and dietary rights - to "furnish the names, inmate identification numbers, and current locations of the inmate witnesses …."). The court in Murray, III also appointed counsel, who "would have more leeway in contacting inmate witnesses than a *pro se* inmate." Id.

Courts have routinely weighed the interests in privacy of non-parties in conjunction with a civil rights plaintiff's need, and compelled the non-parties' identities, contact information, and sealed private documents pursuant to appropriate protective orders, given the plaintiff's right to obtain evidence to prove his or her claims, and the public good in permitting plaintiff to do so. See, e.g. King v. Conde, 121 F.R.D. 180, 189, 190-95 (E.D.N.Y. 1988), in which Judge Weinstein established a detailed balancing test for evaluating the assertion of privilege in a federal civil rights action.[5]

According to Conde, the factors favoring disclosure are: (1) relevance to the plaintiff's case, which "is at base a reminder of the fundamental policy that discovery should be broad and any relevant materials, including those reasonably calculated to lead to admissible evidence,

---

[2] In their responses to Plaintiff's document requests Defendants – for a number of categories of documents, such as, *inter alia*, log books, policies and procedures concerning the use of force, and rosters – have stated that these items have been requested and that they will be provided when the documents are received. The time for the production of responsive documents has long since passed, however.

[3] Defendants have also redacted the signatures of Corrections Officers and medical personnel (even from Plaintiff's own medical records), without any appropriate basis for doing so, and have done so in circumstances where there is either no other identifying information or shield numbers are hard to read. There is no legitimate basis for redacting signatures - about which Plaintiff's counsel intends to inquire at deposition - which renders portions of the documents into a difficult-to-decipher swiss cheese and which only serves to make it more difficult to use them.

[4] Plaintiff of course is happy to have an appropriate protective order be entered to protect the other inmates' privacy interests.

[5] Although Conde specifically addresses the disclosure of police records in response to a claim of privilege, its principles readily apply here as well.

should be accessible," (2) importance to the plaintiff's case, (3) strength of the plaintiff's case, and (4) importance to the public interest. Id. at 195. Of these factors, "[t]he interest that without doubt looms the largest . . . is the public interest in giving force to the federal civil rights laws." Id. "[I]t is of special import that suits brought under [section 1983] be resolved by a determination of the truth rather than by a determination that the truth shall remain hidden." Id. Accordingly, "[t]he great weight of the policy in favor of discovery in civil rights actions supplements the normal presumption in favor of broad discovery . . . ." Id.

The factors disfavoring disclosure are: (1) threat to safety, (2) invasion of privacy, (3) weakening of law enforcement programs, (4) chilling of candor of those involved in internal investigations, and (5) state privacy law. See id. at 191-94. With respect to the privacy interest, Conde held that "even disclosures having 'some effect on individual liberty or privacy' because of their personal nature are permissible when disclosure serves important public concerns." Id. at 191. Moreover, state privacy laws are by no means binding and, in fact, courts should guard against the possibility that these "laws may work to protect state officials against the enforcement of federal rights." Id. at 194.

"The court must balance the interests favoring and disfavoring disclosure, keeping in mind that the burden of persuasion rests on the party seeking to prevent disclosure." Id. at 190-91. The party seeking to prevent disclosure must make a "substantial threshold showing" that there are specific harms likely to accrue from disclosure by demonstrating what interests would be harmed, how disclosure under a protective order would cause the harm, and how much harm would be caused. See, Id. at 189. "Both sides must consider the effect of a protective order restricting disclosure to the plaintiff and the plaintiff's attorney, or to the plaintiff's attorney alone. Such an order can mitigate many if not all of the oft-alleged injuries . . . ." If the defendants do not satisfy their threshold burdens, direct disclosure to the plaintiff is required. See Id. at 190.

In Brown v. Oneonta, 160 F.R.D. 18 (N.D.N.Y. 1995), the court relied in part on Conde, and ordered defendants to disclose to the civil rights plaintiff's counsel the name, address and telephone number of a non-party complaining witness to an alleged burglary and assault, so that plaintiff's counsel could contact her for purposes of the litigation. See Id. at 20-21. The court weighed the principle that parties "are entitled as a matter of right to ascertain the names and addresses of persons having knowledge of the subject matter," Id. at 20, against the non-party's privacy interests, concluding that "disclosure, if severely restricted, could both protect the interests of those opposed, and fulfill the founded reasons proffered by plaintiff for disclosure," Id. at 21.

With regard to a number of categories of information and documents, we have invited Defendants to propose to us narrowly tailored protective orders that we will be happy to work collegially with them on in order to reach agreement upon, so as to get the information and documents we need and to also meet Defendants' privacy, or security, or other concerns either with regard to themselves or with regard to non-parties. Defendants, however, have stated that they will not engage in this process, and insist upon waiting for a ruling from Judge Spatt on the Plaintiff's pending Rule 72 Objections concerning Your Honor's rulings concerning the umbrella protective order. But Defendants may not obstruct discovery in this way. The Second Circuit in Lugosch,

4

quoting from a District Court case, makes it clear that defendants may not avoid their discovery duties by relying on umbrella protective orders:

> Thus, defendants cannot be heard to complain that their reliance on the protective order was the primary cause of their cooperation during years of discovery: <u>even without [the confidentiality order], I would eventually have ordered that each discoverable item be turned over to the plaintiffs</u>. Umbrella protective orders do serve to facilitate discovery in complex cases. However, umbrella protection should not substantively expand the protection provided by Rule 26(c)(7) or countenanced by the common law of access. To reverse the burden in this situation would be to impose a significant and perhaps overpowering impairment on the public access right.

<u>Lugosch</u> at 125-126 (quoting from <u>In re Coordinated Pretrial Proceedings</u>, 101 F.R.D. 34, 43-44 (C.D. Cal. 1984). Defendants must produce all discoverable information and documents. They may seek an appropriately tailed protective order(s) for those particular documents or information for which such is warranted, but it is their burden to make the necessary showing.

**<u>Defendants Have Provided Improper Privilege Logs</u>**

Defendants have submitted improper privilege logs, which do not comport with Local Rule 26.2. *See*, some of Defendants' privilege log entries (**Exhibit 3** hereto). We have requested, with regard to the IAU investigation documents that Defendants claim are privileged, that Defendants re-evaluate the IAU investigation documents that have been withheld, and produce to us those parts of the IAU Investigation that contain factual statements concerning the incident. If, after doing that, there are any particular documents from the IAU investigation that Defendants claim are privileged, then they must provide a detailed and proper privilege log listing each withheld document separately and providing the necessary information under Local Rule 26.2 for each withheld document (and the particular privilege asserted for each document). Instead, Defendants have provided a single privilege log entry for multiple documents (NC 96-104, 117-123, 133-157, 161-166, and 173-193), and have not provided the required information, and have asserted a slew of privileges with regard to the whole bunch of documents without stating which privileges supposedly match with which document.[6] These documents should be ordered produced forthwith or, in the alternative, a proper privilege log should be ordered produced forthwith.

Defendants have also recently produced a privilege log concerning the District Attorney file. Defendants' entry concerning NC 252-257 (**Exhibit 3** hereto) purports to assert the "Attorney/Client privilege" with regard to "Attorney's notes", but does not even state, *inter alia*, whether the notes were in fact a communication between any attorney and any client, and, if any of them were, does not provide the name of the author and the recipient or the particular date of each communication. These documents should be ordered produced forthwith or, in the

---

[6] While it can of course be proper to "assert[ ] privilege on the same basis with respect to multiple documents," this is only proper "if the substantive information required by this rule has … been provided in a comprehensible form." Local Rule 26.2 (c).

5

alternative, a proper privilege log in keeping with Local Rule 26.2 should be ordered produced forthwith.

**Concerning Plaintiff's Request for Entry Upon Land**

Plaintiff has requested entry to the Nassau County Correctional Center (NCCC) to inspect and photograph all areas in which Plaintiff was housed or otherwise located. Mr. Upton has done this in a prior case at NCCC without incident, and we have once again offered to enter into an appropriate protective order concerning any photographs we take. Defendants have rebuffed our proposal, and suggested that they would provide us with photographs that they take of certain areas if we designate which areas we want photographs of (and without having been granted access to see the facility in order to so determine), but have argued that they would need to clear a tier in the jail for us to enter and that such is unduly onerous. As an initial matter, we reject the notion that a tier of the jail needs to be cleared for us to enter. All manner of civilians – clergy, teachers, medical personnel, etc. - are present inside of jails all the times and in proximity to the inmates, with professional Corrections Officers present to ensure proper comportment of all involved. Regardless, we need to see the location(s) within NCCC that bear upon Plaintiff's claims with our own eyes to get an actual spatial sense of the layout of the location(s) where the relevant events transpired, and to take our own photographs of what we deem relevant for use with our client, at depositions, and at trial. Two examples of entered protective orders from the SDNY, for the inspection and photographing of two New York City Department of Corrections jails, that could be adjusted[7] for use concerning NCCC in this case, are annexed hereto as **Exhibit 4**.

**Defendants Must Appear at Plaintiff's Counsel's Office for Their Depositions**

Plaintiff also served a Notice of Deposition (**Exhibit 5** hereto) on Defendants on August 5, 2016. The depositions are noticed to take place at the undersigned's office in lower Manhattan. Opposing counsel has agreed to produce Officer Muro for deposition on March 15, 2017, Officer Carbone on March 30, 2017, and Officer Bazante on March 31, 2017, but has stated that she will only produce them at either the Nassau County Attorney's office or at one of the EDNY courthouses. Defendants should be ordered to appear at my office on these dates, as that is the location at which the depositions have been noticed, and there are no exigent circumstances warranting the depositions taking place elsewhere. Local Rule 30.1 states that:

> When a deposition upon oral examination is to be taken at a place more than one hundred (100) miles from the courthouse, any party may request the Court to issue an order providing that prior to the examination, another party shall pay the expense (including a reasonable counsel fee) of the attendance of one attorney for each other party at the place where the deposition is to be taken. The amounts so paid, unless otherwise directed by the Court, may be taxed as a cost at the conclusion of the action or proceeding.

---

[7] Two adjustments that Plaintiff would request be made are that (1) we need to be able to show the photographs to our client, and (2) we will not agree to return any of our files to Defendants at the conclusion of the case. These are exemplary and not exhaustive, of course.

      According to mapquest.com NCCC is only 30.9 miles from my office. Defendants can demonstrate no hardship, or medical or other good reason in this case for departing from the usual procedure of depositions being held, in the normal course, at the office of the attorney for the party seeking discovery. In contrast, however, all of the Plaintiff's counsels' documents, and computer, etc. are at Plaintiff's counsel's offices, and it would be unduly difficult, inconvenient and disruptive for us to take Defendants' depositions elsewhere.

**Conclusion**

      For the foregoing reasons Plaintiff respectfully requests that that the Court issue an Order pursuant to Fed.R.Civ.P. 37(a)(3)(A) compelling production of the above-referenced information and documents, and requiring Defendants to pay the reasonable expenses incurred in having to make the present motion, including attorney's fees pursuant to Fed.R.Civ.P. 37(a)(5)(A).

      I thank the Court for its consideration in this matter.

                        Respectfully submitted,

                        /S/

                        Jeffrey A. Rothman
                        Co-counsel for Plaintiff

Encs. (Exhibits 1-5)