FILED
CLERK
1:17 pm, Mar 30, 2017
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x
CHRISTOPHER GRIEF,

                        Plaintiff,

        -against-

NASSAU COUNTY; SHERIFF MICHAEL SPOSATO,
CO ALBERTO BAZANTE, CO ANGELO MURO, CO JANET
CARBONE, individually and in their official capacities,

                        Defendants.
-------------------------------------------------------------------------x
```

Decision & Order
15-cv-7240(ADS)(AYS)

<u>APPEARANCES:</u>

**Jeffrey A. Rothman, Esq.**
*Co-Counsel for the Plaintiff*
315 Broadway, Suite 200
New York, NY 10007

**John W. Upton, Esq.**
*Co-Counsel for the Plaintiff*
70 Lafayette Street, 7th Floor
New York, NY 10013

**Nassau County Attorney's Office**
*Attorneys for the Defendants*
One West Street
Mineola, NY 11501
    By:    Samantha Goetz
                  Thomas Lai, Deputy County Attorneys

**SPATT, District Judge:**

Presently before the Court in this § 1983 excessive force action are the Plaintiff's objections, lodged pursuant Federal Rule of Civil Procedure ("FED. R. CIV. P.") 72(a), to a pretrial order of United States Magistrate Judge Anne Y. Shields.

For the reasons that follow, those objections are overruled.

# I. BACKGROUND

On December 18, 2015, the Plaintiff commenced this action against Nassau County, Sheriff Michael Sposato, and three individual correction officers employed at the Nassau County Correctional Center ("NCCC"), namely, Alberto Bazante, Angelo Muro, and Janet Carbone (collectively, the "Individual Defendants"). In general, the Plaintiff alleges that he sustained physical and emotional injuries as a result of mistreatment he suffered at the hands of the Individual Defendants while being held in custody at NCCC.

On March 8, 2016, the Defendants filed an answer to the complaint, substantially denying the Plaintiff's allegations.

## A. The Competing Confidentiality Agreements

At the outset of discovery, despite a good faith effort to reach mutually-agreeable terms, the parties were unable to agree on a stipulated confidentiality agreement to govern the handling and exchange of sensitive information in this case. In particular, the parties deadlocked on two discrete issues.

First, the parties disagreed about whether confidential information disclosed during discovery could properly be used for purposes other than simply prosecuting or defending this action. The Plaintiff argued that any eventual confidentiality order should provide for a method by which the parties may seek Court approval to disclose confidential information obtained through this lawsuit. Although the Plaintiff did not speculate as to the reason such disclosure may become necessary, he predicted that the "materials exchanged in this litigation may have importance in other litigation, to the press, to legislative bodies, or otherwise." The Defendants disagreed, contending that, except where both sides agree, confidential information should not be used for any non-litigation purpose, and that doing so would circumvent the intent and purpose of the confidentiality agreement.

In this regard, the parties also disagreed about the purposes for which confidential information could properly be used *after* the termination of the case. Although the parties stipulated that an eventual confidentiality order would survive the termination of the litigation, the Plaintiff resisted any obligation to return or destroy confidential materials disclosed during discovery, and sought to reserve the right to seek the Court's permission to use such information after the case was resolved.

Second, the parties disagreed about whether documents and information relating directly to the incidents forming the basis of the complaint could properly be designated as confidential. The Plaintiff deemed it "simply ridiculous" that the Defendants could potentially designate as confidential some information that relates to the incidents at the heart of this case. Again the Defendants disagreed, arguing that it would be prejudicial at this early stage of the litigation, when the amount and nature of the discoverable materials are unknown, to exclude from the scope of the confidentiality agreement any and all documents and information potentially related to the underlying events.

Both sides submitted competing versions of the confidentiality agreement, and cross-moved for Judge Shields to So-Order their respective draft.

B.  **The Challenged Order**

By Order dated August 26, 2016, Judge Shields issued a written Order (the "Challenged Order"), in which she adopted the relevant portions of the Defendants' version of the confidentiality agreement.

In particular, with respect to the Plaintiff's efforts to carve out ways to use confidential information for non-litigation purposes, Judge Shields found his position to be unreasonable. The court concluded that, when producing sensitive government documents, the Defendants could not justifiably rely on a confidentiality order that would perpetually be subject to further modification upon the Plaintiff's request.

For substantially the same reasons, Judge Shields also overruled the Plaintiff's opposition to returning and/or destroying confidential information at the conclusion of the case.

Further, Judge Shields overruled the Plaintiff's effort to deny confidentiality to any and all materials relating directly to the incidents alleged in the complaint. In this regard, the court reasoned that, to approve the "broad and unspecified blanket provision" proposed by the Plaintiff would be to undermine completely the purpose of the confidentiality agreement by inhibiting the free flow of discoverable information.

On September 9, 2016, the Plaintiff filed a motion, pursuant to Local Civil Rule 6.3, requesting that Judge Shields reconsider the conclusions reached in the Challenged Order.

On October 13, 2016, Judge Shields issued a second written Order, in which she found that the Plaintiff had failed to set forth a sufficient basis for reversing the contested portions of the Challenged Order, and denied the motion for reconsideration in all respects.

On October 27, 2016, pursuant to FED. R. CIV. P. 72, the Plaintiff filed written objections in this Court, seeking to vacate the Challenged Order and So-Order the Plaintiff's proposed version of the confidentiality agreement.

## II. DISCUSSION

### A. The Standard of Review

Rule 72 provides, in relevant part, as follows:

> When a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide, the magistrate judge must promptly conduct the required proceedings and, when appropriate, issue a written order stating the decision. A party may serve and file objections to the order within 14 days after being served with a copy. . . . The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law.

FED. R. CIV. P. 72(a).

As this statutory language makes clear, "a magistrate judge's ruling on non-dispositive pretrial matters should not be disturbed by the district judge absent a determination that such

4

findings were 'clearly erroneous or contrary to law.' " *Koumoulis v. Indep. Fin. Mktg. Grp.*, 29 F. Supp. 3d 142, 145 (E.D.N.Y. 2014) (citing 28 U.S.C. § 636(b)(1)(A)).

It has been recognized that "[m]atters involving pretrial discovery generally are considered nondispositive of the litigation and are subject to the more lenient 'clearly erroneous' standard." *United States v. 281 Syosset Woodbury Rd.*, 862 F. Supp. 847, 851 (E.D.N.Y. 1994) (quoting *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir.), *cert. denied*, 498 U.S. 846, 111 S. Ct. 132, 112 L. Ed. 2d 100 (1990)), *aff'd*, 71 F.3d 1067 (2d Cir. 1995). In this regard, " 'the magistrate judge's findings should not be rejected merely because the court would have decided the matter differently.' " *Ross Univ. Sch. of Med., Ltd v. Brooklyn-Queens Health Care, Inc.*, No. 09-cv-1410, 2013 U.S. Dist. LEXIS 45949, at *14-*15 (E.D.N.Y. Mar, 28, 2013) (quoting *Nielsen v. N.Y.C. Dep't of Educ.*, No. 04-cv-2182, 2007 U.S. Dist. LEXIS 48637, at *3 (E.D.N.Y. July 5, 2007)). Rather, " '[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' " *281 Syosset Woodbury Rd.*, 862 F. Supp. at 851 (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S. Ct. 525, 92 L. Ed 746 (1948)).

Under Rule 72, the "heavy" burden of proof lies with the moving party, and the highly deferential standard "only permits reversal where the magistrate judge abused h[er] discretion." *Ahmed v. T.J. Maxx Corp.*, No. 10-cv-3609, 2015 U.S. Dist. LEXIS 62001, at *15-*16 (E.D.N.Y. May 11, 2015) (Spatt, *J.*); *see Spinner v. City of New York*, No. 01-cv-2715, 2003 U.S. Dist. LEXIS 14854, at *12-*13 (E.D.N.Y. Aug. 22, 2003) ("It is well settled that, when reviewing objections . . . under § 636(b)(1) and/or Rule 72(a), the clear error standard dictates that the magistrate's decision be afforded broad deference; thus, this Court is not warranted to simply substitute its judgment for that of a magistrate judge").

With these standards in mind, the Court turns to the Plaintiff's substantive contentions.

B.  Application to the Facts of this Case

1.  Whether Magistrate Judge Shields Clearly Erred in Limiting the Permissible Use of Confidential Information to Litigation-Related Purposes

The Plaintiff first challenges Judge Shields' decision to omit from the confidentiality agreement his proposed language permitting the parties to seek Court approval to use confidential information for non-litigation purposes.

In this regard, in the Challenged Order, Judge Shields explained that:

> Should the proposed modifications related to paragraphs 6(a) and 7 be granted, the Defendants would not be justified in relying on the confidentiality order. If the order were modified as Plaintiff proposes, the Defendants would not be free from the risk that their confidential information would be disclosed, as the order would always be subject to further modification upon Plaintiff's request. *Dorsett v. Cty. of Nassau*, 289 F.R.D. 54, 66 (E.D.N.Y. 2012) (quoting *Madanes v. Madanes*, 199 F.R.D. 135, 141 (S.D.N.Y. 2001)); *see also Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 126 (2d Cir. 2006) (finding that it was not reasonable for a party to rely on a confidentiality order that contemplated anyone could apply for relief from provisions in the order). Thus, the Court denies the proposed modification made by Plaintiff regarding 6(a) and 7.

*See* Challenged Order, DE [18], at 5.

The Plaintiff sought reconsideration of this holding on the ground that Judge Shields had overlooked other, uncontested portions of the confidentiality agreement, which similarly permit the parties to petition the Court for relief from its provisions. Thus, the Plaintiff argued that, contrary to Judge Shields' conclusion, his proposed language could not be said to deprive the Defendants of the ability to justifiably rely on the agreement.

To support this theory, the Plaintiff highlighted the following uncontested sections of the confidentiality agreement:

> 8. <u>Restrictions of Disclosure</u>
>
> . . . If the recipient and producing parties are unable to agree to the [confidential] status of the subject information, any party to this Agreement may raise the issue of the designation of such a status to the Court upon ten (10) days written notice. . . .

> 9. Reservation of Rights
>
> ... [A]ny party may move for relief from, or general or particular modification of, the mechanism for maintaining confidentiality herein set forth or the application of this Agreement in any particular circumstance.

Judge Shields denied that the court had overlooked these provisions, instead drawing a distinction between this language, which simply "recognizes the inherent authority the Court has in determining disputes that may arise when parties utilize a confidentiality order," and the language proposed by the Plaintiff, which, by contrast, "do[es] not simply recognize the Court's inherent authority, but, instead, specifically contemplate[s] that confidential information may be disclosed in the future." *See* Order Denying Reconsideration, DE [26], at 11.

In sum, Judge Shields concluded that there exists a material difference between memorializing the Court's role as the ultimate arbiter of discovery disputes, and crafting a procedure by which the parties can seek permission to disclose confidential information to the public.

Challenging these findings, the Plaintiff now advances the following arguments favoring reversal: (1) Judge Shields misapplied this Court's opinion in *Dorsett v. County of Nassau*, 289 F.R.D. 54 (E.D.N.Y. 2012) (Spatt, *J.*); (2) Judge Shields improperly relied on the Second Circuit's opinion in *Lugosch v. Pyramid Co.*, 435 F.3d 110 (2d Cir. 2006); and (3) the "heightened public interests at stake with regard to the protection of civil rights" militates toward allowing the Plaintiff to retain litigation materials from this case, and to potentially use them for outside purposes.

In the Court's view, these arguments are insufficient to establish clear error, and the Plaintiff's objection is overruled.

The Court's analysis necessarily begins with a proposition that is "well-settled" in this Circuit, namely, that although the Federal Rules "create no automatic prohibition against using discovery obtained in one litigation" for outside purposes, "it is still within the Court's discretion to limit such secondary use of discovery through a protective order." *Duling v. Gristede's Operating Corp.*,

266 F.R.D. 66, 76-77 (S.D.N.Y. 2010) (collecting cases); *see also Sperry Rand Corp. v. Rothlein*, 288 F.2d 245, 246, 249 (2d Cir. 1961) (finding that an "order entered by the district court enjoin[ing] the plaintiff from making any use whatsoever, in any proceeding other than the one pending in [that district court], of information and evidence disclosed by the defendants in the course of discovery proceedings in the pending case" was within the district court's discretion); *Martinez v. Lvnv Holding Llc*, No. 14-cv-677, 2015 U.S. Dist. LEXIS 68244, at *4-*5 (E.D.N.Y. May 27, 2015) ("As the Supreme Court has recognized, litigants do not have 'an unrestrained right to disseminate information that has been obtained through pretrial discovery' and 'restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information.' " (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 31, 104 S. Ct. 2199, 81 L. Ed. 2d 18 (1983)).

This is particularly true where, as here, the information sought through discovery is of a uniquely sensitive nature. *See, e.g.*, *Closed Joint Stock Co. "CTC Network" v. Actava TV, Inc.*, No. 15-cv-8681, 2016 U.S. Dist. LEXIS 46713, at *16-*17 n.8 (S.D.N.Y. Mar. 28, 2016) (noting that "[a]n order limiting the use of discovery to the litigation in which it is produced 'is particularly appropriate when the material at issue is private,' which, by definition, will be true of any material entitled to 'confidential' status under the proposed protective order" (quoting *Duling*, 266 F.R.D. at 77)).

Applying these principles, other courts to consider the appropriate scope of a confidentiality order have declined to incorporate provisions which authorize the disclosure of confidential information obtained through litigation to outside sources, including the media. *See Sinni v. Forest Hills Hosp.*, No. 09-cv-4572, 2010 U.S. Dist. LEXIS 136052, at *3-*4 (E.D.N.Y. Dec. 23, 2010) (finding that the plaintiff's request for permission to disclose confidential information to the media was akin to an impermissible "blank check").

Against this backdrop, the Court finds no clear error in Judge Shields' discretionary decision to limit the permissible secondary uses of confidential information obtained through this litigation.

In this regard, the Plaintiff cites no authority to support his theory that, simply because the confidentiality agreement contemplates some scenarios in which the parties may seek the court's intervention, Judge Shields was therefore required to codify any other scenario in which the Plaintiff predicts he may desire relief from its provisions.

Nor was Judge Shields' reliance on *Dorsett* and *Lugosch*, *supra*, misplaced.

As noted above, in the Challenged Order, the court cited page 66 of the *Dorsett* opinion as supporting the proposition that the Defendants could not justifiably rely on a confidentiality order that would perpetually be subject to modification upon the Plaintiff's request. This was, in the Court's view, a reasonable reference.

Despite the Plaintiff's current attempt to distinguish *Dorsett* factually, it is clear that Judge Shields did not analogize that decision for its factual similarity, but drew from it a discrete legal principle that is not unique to *Dorsett*, and is cited with approval in a number of cases that the Plaintiff's submissions failed to adequately address.

Indeed, the referenced portion of the Challenged Order actually contains a direct quotation from a Southern District case decided 11 years earlier. *See Dorsett*, 289 F.R.D. at 66 (quoting *Madanes v. Madanes*, 199 F.R.D. 135, 141 (S.D.N.Y. 2001)). Nevertheless, short of distinguishing *Dorsett*'s facts, the Plaintiff failed to set forth a sufficient reason why the Court should not adhere to the general premise that a defendant's reliance on a confidentiality order will be less justified where, as the Plaintiff proposed doing here, its plain language contains specific procedures for disclosing confidential materials to non-parties. *See, e.g.*, *Int'l Equity Invs., Inc. v. Opportunity Equity Partners Ltd.*, No. 05-cv-2745, 2010 U.S. Dist. LEXIS 19510, at *20 (S.D.N.Y. Mar. 2, 2010) (noting that "[t]he reasonableness of the Parties' indefinite reliance on a confidentiality order is diminished if they plan for its modification"); *In re EPDM Antitrust Litig.*, 255 F.R.D. 308, 320 (D. Conn. 2009) ("Where a protective order contains express language that limits the time period for enforcement, anticipates

the potential for modification, or contains specific procedures for disclosing confidential materials to non-parties, it is not reasonable for a party to rely on an assumption that it will never be modified" (citing *SEC v. TheStreet.com*, 273 F.3d 222, 231 (2d Cir. 2001)).

The same is true of *Lugosch*, where the Second Circuit concurred with the notion that a defendant's reliance on a confidentiality order will be less justified when the order's plain language "specifically contemplates that relief from the provisions of the order may be sought ant any time." *Lugosch*, 435 F.3d at 126 (citing *Diversified Grp., Inc. v. Daugerdas*, 217 F.R.D. 152, 160 (S.D.N.Y. 2003), for the proposition that "the parties' reliance on the confidentiality afforded by the Protective Order must have been tempered because the Order specifically provide[d] that 'any party or interested member of the public may request at any time that a 'Confidential' designation be removed from any document or information' ").

In view of these decisions, Judge Shields did not err by concluding that it would unnecessarily diminish the Defendants' reasonable reliance on the confidentiality order to create an avenue whereby the Plaintiff could seek future disclosure of confidential materials to individuals in other litigation, to the press, or to unspecified legislative bodies.

Finally, it is true, as the Plaintiff asserts, that Judge Shields did not include an explicit discussion of the important public interests served by enforcing the federal civil rights laws. However, under the present circumstances, the Court finds this fact to be inconsequential, as protective orders are routinely imposed in similar matters. Contrary to the Plaintiff's suggestion, the mere fact that this is a § 1983 case does not convert an otherwise proper exercise of discretion into a clear error.

Accordingly, to the extent that the Plaintiff objects to the portion of the Challenged Order that declined to authorize a method by which confidential information could be used for non-litigation purposes, his objection is overruled.

2. **Whether Magistrate Judge Shields Clearly Erred in Allowing the Parties to Designate as Confidential Discoverable Materials Relating to the Incidents in the Complaint**

The Plaintiff further objects to the portion of the Challenged Order in which Judge Shields declined to remove from the scope of the confidentiality agreement any documents or information that relate directly to the incidents alleged in the complaint.

In this regard, Judge Shields found that the Plaintiff's proposed language, which categorically prohibited such documents from receiving confidential treatment, had failed to show appropriate regard for the possibility that some confidential information may well be subsumed within broader, otherwise non-confidential materials relating to the events in question. Thus, the court disagreed with the Plaintiff's theory that all documents and information which relate to the incidents in the complaint are necessarily ineligible for confidential treatment.

On reconsideration, the Plaintiff suggested to Judge Shields that she may have overlooked a potentially curative proposal that his attorney made to defense counsel. Namely, during their private negotiations, the Plaintiff's counsel apparently suggested adding the following language to the agreement: "If investigative or other materials that relate to the incident(s) underlying the Complaint in this action contain materials that are properly designated as confidential, these limited materials contained therein may be designated as confidential." Although not included in the draft agreements submitted for the court's review, the Plaintiff had apparently requested that Judge Shields consider incorporating this language into the ultimate agreement.

Again, Judge Shields denied overlooking this oral proposal. Rather, in its discretion, the court simply did not find the Plaintiff's proposal sufficiently persuasive to justify limiting the breadth of the confidentiality agreement.

Challenging this determination, the Plaintiff now advances the following arguments favoring reversal: (1) Judge Shields misapplied a pretrial decision by Magistrate Judge Tomlinson in the *Dorsett* matter, *see Dorsett v. County of Nassau*, 762 F. Supp. 2d 500 (E.D.N.Y. 2011); and (2) because the

Plaintiff's proposed limitation on the scope of the confidentiality order "makes eminent good sense," the court clearly erred in declining to adopt it.

In the Court's view, these arguments are again insufficient to establish clear error, and the Plaintiff's objection is overruled.

Contrary to the Plaintiff's protestations, there is nothing unusual or inherently improper about a so-called "umbrella" protective order. *See United States v. Smith*, 985 F. Supp. 2d 506, 546-47 (S.D.N.Y. Dec. 4, 2013) (noting that " '[i]t is . . . consistent with the proper allocation of evidentiary burdens for the [C]ourt to construct a broad 'umbrella' protection order upon a threshold showing . . . of good cause' " (quoting *Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1122 (3d Cir. 1986)); *see also EEOC v. Sterling Jewelers, Inc.*, No. 08-cv-706, 2011 U.S. Dist. LEXIS 67318, at *5-*6 (W.D.N.Y. June 23, 2011) (noting that " '[t]he unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders,' *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36, 104 S. Ct. 2199, 81 L. Ed. 2d 18 (1984)," and therefore, " 'in cases of unusual scope and complexity . . . broad protection during the pretrial stages of litigation may be warranted without a highly particularized finding of good cause.' *In re Terrorist Attacks on September 11, 2001*, 454 F. Supp. 2d 220, 222 (S.D.N.Y. 2006)); *Zyprexa Litig.*, 474 F. Supp. 2d 385, 416 (E.D.N.Y. 2007) (in the commercial litigation context, noting that "[t]he value of umbrella orders has been well-documented"); *cf. City of Hartford v. Chase*, 942 F.2d 130, 137-38 (2d Cir. 1991) (Pratt, J., concurring) (lamenting the "increasing frequency and scope of confidentiality agreements that are ordered by the court," but noting that "[t]here are, of course, situations in which judicial enforcement of private confidentialities may be appropriate, convenient, and even necessary," namely, "the use of such orders to expedite pretrial discovery by reducing the need for judicial supervision").

Therefore, Judge Shields was well within her discretion to decline the Plaintiff's invitation to limit the permissible scope of the confidentiality order, and the Plaintiff's subjective opinion that his proposal made "eminent good sense" is plainly insufficient to support a finding of clear error.

Nor, again, does this Court find that Judge Shields misapplied the law from *Dorsett*.

In this regard, the Challenged Order cites a Memorandum Decision and Order issued by Judge Tomlinson for the proposition that, in some circumstances, items relating to a plaintiff's underlying claims may be deemed confidential. This was, again, a reasonable reference given that the gravamen of Judge Tomlinson's well-reasoned decision was that an internal affairs report, which related directly to the events underlying the plaintiff's civil rights complaint, was properly subject to a protective order preventing its disclosure to the public. This Court affirmed that result over the objections of the plaintiff and intervening members of the press. *See Dorsett v. County of Nassau*, 800 F. Supp. 2d 453 (E.D.N.Y. 2011) (Spatt, *J.*).

Again, Judge Shields did not cite *Dorsett* for its factual similarity to this case. On the contrary, the court took care to note that, contrary to the Plaintiff's rigid position that no document pertaining to the underlying events can ever be found confidential, "depending on the circumstances," courts in this district have found items related to a plaintiff's underlying claims appropriate for confidential treatment. *See* Challenged Order, DE [18], at 6. The Court identifies no error in this observation.

Accordingly, to the extent that the Plaintiff objects to the portion of the Challenged Order that declined to remove from the scope of the confidentiality agreement any documents or information that relate directly to the incidents alleged in the complaint, his objection is overruled.

### III. Conclusion

Based on the foregoing, the Plaintiff's objections to the Orders dated August 26, 2016, DE [18], and October 13, 2016, DE [26], are overruled in their entirety, and this matter is recommitted to Magistrate Judge Shields for the continuation of discovery.

Finally, the Court notes that the written objections filed by the Plaintiff contained numerous substantive footnotes, which are expressly prohibited by this Court's Individual Motion Practices. *See* Judge Spatt Indiv. R. II(A) and IV(B)(i). Although the Court, in its discretion, considered the footnotes in resolving these objections, any future papers that do not comply with this Court's rules will be returned to the filing party without consideration.

It is **SO ORDERED:**

Dated: Central Islip, New York
March 30, 2017

*/s/ Arthur D. Spatt*
ARTHUR D. SPATT
United States District Judge