UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
CHRISTOPHER GRIEF,

                              Plaintiff,                      ORDER
                                                                                               CV 15-7240 (ADS) (AYS)

      -against-

NASSAU COUNTY, SHERIFF MICHAEL
SPOSATO, JOHN DOE 1, JOHN DOE 2,
and JOHN DOE 3,
individually and in their official capacities,

                              Defendants.
-----------------------------------------------------------X

**ANNE Y. SHIELDS, United States Magistrate Judge:**

      This is a civil rights case in which Plaintiff Christopher Grief ("Greif" or "Plaintiff") claims to have been injured by Defendants Nassau County, Sheriff Michael Sposato, Corrections Officer ("CO") Alaberto Bazante, CO Angelo Muro, and CO Jaret Carbone (collectively "Defendants"). Specifically, Grief seeks relief for injuries alleged to have been suffered as a result of being assaulted, battered and otherwise abused while at the Nassau County Correctional Center ("NCCC") in violation of his rights, privileges, and immunities secured by the Civil Rights Act of 1871, 42 U. S.C. § 1983, the Fourth, Fifth and Fourteenth Amendments to the United States Constitution, and the Constitution and laws of the State of New York. See Amended Complaint ("Am. Compl."), Docket Entry ("DE") 27. Such injuries are alleged to have occurred on or around September 28, 2014. Am. Compl. ¶¶ 14-16.

      By way of background, Plaintiff filed the complaint in this action on December 18, 2015, Docket Entry herein ("DE") 1, and an Amended Complaint on October 13, 2016. DE 27. Although approximately one and a half years have passed since the filing of the complaint

herein, little has been accomplished in the realm of discovery. On July 12, 2016, this Court held an Initial Conference. DE 14. At that time, the parties were directed to complete certain tasks, including submission of a confidentiality order by July 26, 2016. Id. On July 26, 2016, the parties requested to extend the deadline for submission of a confidentiality order until August 3, 2016. DE 15. On August 3, 2016, Defendants submitted a proposed confidentiality order. DE 16. On August 11, 2016, Plaintiff filed opposition to Defendants' proposed order. DE 17. On August 26, 2016, the Court granted in part and denied in part Defendants' confidentiality order, and extended the parties' time to complete discovery until May 11, 2017. See August 26, 2016. On September 10, 2016, Plaintiff filed a motion for consideration. DE 21. On September 26, 2016, Defendants filed opposition, DE 25, and on October 13, 2016, this Court denied Plaintiff's motion for reconsideration. DE 26. As no confidentiality order governed the exchange of documents, discovery was inevitably stalled, and on October 20, 2016, the parties requested, and were granted, an extension of time. Such extension set the conclusion of discovery at June 11, 2017. See Electronic Order dated October 21, 2017.

On October 27, 2017, Plaintiff filed Rule 72 Objections with regard to this Court's determination on the confidentiality order. DE 29. On October 21, 2017, the parties once again moved for an extension of time, at which time this Court granted an additional twenty (20) days to complete discovery. DE 34. On February 24, 2017, the parties, once again requested, and were granted an additional sixty (60) day extension of time. DE 44. On March 1, 2017, the Plaintiff moved to compel the Plaintiff to produce certain discovery. DE 45. Defendant filed opposition on March 15, 2017, at which time Defendants requested "this [C]ourt to hold in abeyance the discovery deadlines until Judge Spatt makes a ruling on the Rule 72 Objections in order for a proper confidentiality agreement to be in place, that the Court direct depositions to be

held at the Office of the Nassau County Attorney, and lastly deny Plaintiff's request to enter NCCC." DE 46. On March 16, 2017, Plaintiff moved for leave to file a reply, and without gaining permission, filed such reply that same day. DE 47, 48. On March 20, 2017, this Court denied Plaintiff's motion to compel without prejudice to his motion at the status conference scheduled for May 4, 2017 before Magistrate Judge Anne Y. Shields." See Electronic Order dated March 20, 2017. On That same day, this Court also denied Plaintiff's request to file a reply to Defendant's opposition. Id.

On March 30, 2017, the District Court overruled Plaintiff's objections to this Court's decision on the parties' confidentiality order. DE 49. On May 3, 2017, Defendant requested to appear by telephone at this Court's previously scheduled May 4, 2017 status conference. That request was denied, and this Court directed the parties to submit their proposed confidentiality order and file a motion to extend discovery deadlines. See Electronic Order dated May 3, 2017. On May 11, 2017 this Court once again granted the parties' request to extend discovery deadlines to the extent that parties were granted an additional ninety (90) days to complete discovery. The Court further directed Counsel to appear at a status conference on June 12, 2017, and so ordered the confidentiality order. Electronic Order dated May 11, 2017.

On June 12, 2017, the Court held a status conference. During the conference, Counsel stated they had not conferred after the issuance of the protective order. By minute order, this Court gave permission to Plaintiff to file a discovery motion, but required that such motion be filed only after parties conferred as to what discovery parties agree to exchange in light of the so ordered confidentiality order. This Court further instructed that such motion shall only include discovery issues that remain in dispute after such conference. Plaintiff's counsel was further

instructed that any motion to compel must be done by letter motion. DE 54. Plaintiff has now timely moved to compel. The motion is fully briefed and ripe for decision.

DISCUSSION

I.  Legal Standards

The scope of discovery is set forth in Rule 26 of the Federal Rules of Civil Procedure. That Rule has been amended, on several occasions, to reflect evolving judgments as to the proper scope of discovery. Over time, these amendments have been aimed at striking the proper balance between the need for evidence, and the avoidance of undue burden or expense.

In 1999, Rule 26(b)(1) stated that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party." Fed. R. Civ. P. 26(b)(1) (1999). In 2000, in an effort to curb over-discovery that took advantage of tying the term "subject matter" to the definition of the scope of discovery, Rule 26 was amended. See Fed. R. Civ. P. 26(b)(1), Advisory Comm. Notes (2000). That amendment required a party to show "good cause" before obtaining discovery that is "relevant to the subject matter involved in the action." Fed. R. Civ. P. 26(b)(1).

Most recently, as of December 1, 2015, Rule 26 has again been amended. The December 2015 amendment to Rule 26 now defines the scope of discovery to consist of information that is relevant to the parties' "claims and defenses." Thus, the discretionary authority to allow discovery of "any matter relevant to the subject matter involved in the action" has been eliminated. Additionally, the current version of Rule 26 defines permissible discovery to consist of information that is, in addition to being relevant "to any party's claim or defense," also "proportional to the needs of the case." Id.

While proportionality factors have now been incorporated into the Rule 26(b)(1) definition, those factors were already a part of Federal discovery standards, appearing in Rule 26(b)(2)(C)(iii). Those proportionality factors have now been restored to the place of their intended importance by their incorporation into the very definition of permissible discovery. See Fed. R. Civ. P. 26(b)(1), Advisory Comm. Notes (2015) (noting that amendment "restores the proportionality factors to their original place in defining the scope of discovery," and "reinforces the Rule 26(g) obligation of the parties to consider these factors in making discovery requests, responses, or objections").

The specific proportionality factors to be assessed when considering the scope of discovery are:

- The importance of the issues at stake in the litigation;
- The amount in controversy;
- The parties relative access to relevant information;
- The parties' resources;
- The importance of discovery in resolving issues; and
- Whether the burden or expense of the discovery is outweighed by the benefit

Fed. R. Civ. P. 26(b).

Notably absent from the present Rule 26 is the all too familiar, but never correct, iteration of the permissible scope discovery as including all matter that is "reasonably calculated to lead to" the discovery of admissible evidence. This language was never intended to define the scope of discovery, but was intended only to make clear that the discovery is not limited by the concept of admissibility. Unfortunately, the "reasonably calculated" language has often been employed to refer to the actual scope of discovery. Clearing up this misinterpretation, the new Rule

disposes of this language, ending the incorrect, but widely quoted, misinterpretation of the scope of discovery. The present definition of the scope of discovery continues to refer to admissibility, but only by stating that "[i]nformation within the scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b).

Overarching the interpretation of Rule 26, and indeed all of the Federal Rules of Civil Procedure, is the standard referred to in Rule 1 thereof. That Rule, as amended in December of 2015, requires that the Federal Rules of Civil Procedure "be construed, administered, and employed *by the court and the parties* to secure the just, speedy, and inexpensive determination of every action and proceeding. " Fed. R. Civ. P. 1 (emphasis added). See Comment to 2015 Amendment to Rule 1 (noting that "the parties share the responsibility" to employ the rules consistently with the standards of Rule 1, and that "[e]ffective advocacy is consistent with -- and indeed depends upon -- cooperative and proportional use of procedure") (emphasis added).

Judicial involvement has long been recognized as critical to the effective management of discovery. Thus, as early as 1983, the Advisory Committee explained that "[t]he rule contemplates greater judicial involvement in the discovery process and thus acknowledges the reality that it cannot always operate on a self-regulating basis." Committee Notes (2015) (referring to 1983 notes). Again in 2000, the Advisory Committee noted that it had been "informed repeatedly by lawyers that involvement of the court in managing discovery is an important method of controlling problems of inappropriately broad discovery") (Committee Notes 2000). The 2015 amendment revisits this theme, noting that the amendment "again reflects the need for continuing and close judicial involvement in the cases that do not yield readily to the ideal of effective party management," including that cases where "the parties fall short of effective, cooperative management on their own." Advisory Comm. Notes 2015.

With these standards and obligations in mind, the Court turns to the merits of the present motion to compel.

II.     Disposition of the Motion

Plaintiff moves this Court to compel discovery on multiple grounds. According to Plaintiff, despite numerous attempts made in good faith about what documents to exchange, Defendants refuse to provide sufficient and/or verified responses. Plaintiff further asks the Court to take notice that the responses that were finally provided, were exceedingly late, and produced only after Plaintiff's initiation of motion practice. As such, Plaintiff seeks to have this Court order Defendants to pay the attorney fees expended in the making of this motion. The Court now turns to address each of Plaintiff's requests.

1. Photographs of Correction Officers

On June 12, 2017, this Court held a status conference. During the conference, the Court instructed the County to produce photographs of the defendant officers so that Plaintiff may confirm that he is proceeding against the proper Defendants. See Minute Order dated June 12, 2017.

According to Plaintiff, Defendant has failed to produce the photograph of Defendant CO Alberto Bazante ("Bazante"). As Bazante is a defendant officer, the Court hereby directs the County to turn over a photograph of Bazante within ten days of his order.

2. Verified Responses

Since Plaintiff filed the instant motion, the County has provided individualized verified responses of Officer Bazante. DE 57. However, the County argues that "there are no allegations against Sheriff Sposato individually and therefore it is assumed he is named to establish *Monell* liability." Id. It is argued that since Sheriff Sposato is named in his official capacity as part of the

municipality, he is not individually required to sign any verification, and the December 20, 2016 response, signed by an attorney for the County is therefore sufficient. DE 57. Plaintiff, on the other hand, argues that "it has been clear from the beginning of this case that Sheriff Sposato is being sued both 'individually and in his official capacity,' see, Complaint, and Amended Complaint ¶ 7, and thus is required to answer Plaintiff's interrogatories "separately and fully in writing under oath" pursuant to Fed. R. Civ. P. 33(b)(3) just like any other individual party." DE 58.

A review of the Complaint makes clear that although Sheriff Sposato is named in his individual and official capacity, the allegations against him are <u>Monell</u> claims. He is alleged to have "authorized, participated, sanctioned, approved, encouraged and ratified those operations, customs and policies." Amended Complaint ¶ 7. There are no individual claims against Sposato, nor is it alleged that he was personally involved in any of the alleged violations of Plaintiff's rights other than the Plaintiff's <u>Monell</u> claim. However, at this juncture, Sheriff Sposato is a named Defendant and therefore must "separately and fully in writing under oath" respond to Plaintiff's interrogatories. Fed. R. Civ. P. 33(b)(3).

3. <u>As to the Defendants' Responses</u>

Plaintiff argues that the "single 'response' by the County and Sposato to its discovery requests received on December 21, 2016, and the incomplete responses received by email on March 3, 2017 from Carbone and Muro, are also almost entirely evasive and non-responsive, and were provided exceedingly late, thus waiving Defendants' right to lodge any of the numerous boilerplate objections that they have lodged." DE 56 at 4 (citing Fed.R.Civ.P. 33(b)(4)). Plaintiff asserts that Defendants (1) did not provide substantive information in response to almost all Plaintiff's interrogatories, (2) have not provided the individual Defendants' personnel and/or

8

disciplinary records, (3) have not provided the identities and photographs of the inmates, and (4) have not provided the identity of the individuals who used force on the Plaintiff. Plaintiff further claims that the Defendants' quibbling and boiler plate and inapposite objections have not been made in good faith. Therefore, Plaintiff asks the Court to compel a short date certain to provide complete responses to each interrogatory and document request, and be barred from making objections.

   a. <u>Substantive Responses</u>

The Court notes that many of the objections raised by Defendants are based on attorney-work product privilege, attorney-client privilege, law enforcement privilege and/or deliberate process privilege. Such objections have been made generally. This Court therefore orders that to the extent that Defendants are asserting privilege objections, they are directed to produce a proper privilege log within ten (10) days of this order, and set forth the privilege(s) being asserted as to each document. Defendants must state with specificity the privilege asserted for each document, and the basis of each objection. Defendants shall set forth how each document and/or response withheld satisfies the criteria for asserting such privilege.

If, after the production of Defendants proper privilege log, the parties continue to disagree as to whether any particular privilege applies, they may move for the Court to hold a hearing and/or conduct an <u>in camera</u> review on the documents in question. Such motion shall be made within ten (10) days of the production of Defendant's privilege log.

Plaintiff additionally asserts that Defendants are using boiler plate language in objecting instead of answering interrogatories in good faith. Without making a determination of good faith, the Court agrees that Defendants' responses include inapplicable boiler plate language. The Court points to the following example:

(Interrogatory No. 9)Identify any and all DOC employees who struck or used any type of physical force upon Plaintiff at any point during the Incident, and identify all documents pertaining thereto.

(Defendants' Response) County Defendants object to this interrogatory as overly broad, vague and ambiguous. County Defendants also object to this interrogatory on the basis that it fails to provide any specificity as to the information being sought, and not reasonably calculated to lead to the discovery of admissible evidence. Defendants further object because there is no entity called the DOC. County Defendants further object on the basis the requested information potentially seeks information protected under the law enforcement privilege, deliberative process privilege, attorney-work product privilege, attorney-client privilege. Finally, County Defendants object on the basis that Plaintiff fails to particularize and/or identify and/or define the term "incident." Accordingly, County Defendants cannot respond to the Interrogatory as propounded.

DE 56-2.

Although the Defendants may not be able to identify employees who struck or used physical force on the Plaintiff, the question is neither overbroad, nor is it vague or ambiguous. Moreover, if Defendants could provide specific names of people who had physical contact with Plaintiff, it would lead directly to discoverable information. The Court also finds that the Defendants' objections with regard to the term "incident" and "DOC" are inconsistent with the Federal Rules of Civil Procedure, which require that the rules "be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. Therefore, Defendants are directed to reevaluate their objections, and provide Plaintiff with either responsive answers and/or clear and particularized objections with ten (10) days of this order. To the extent that Defendants are unsure of what certain language means (for example the term "incident"), DE 56-2, Defendants shall confer with Plaintiff to obtain clarity rather than object on such basis. To the extent that such questions are overly broad, as discussed below, Defendant shall confer with Plaintiff to

obtain clarity. If clarity cannot be reached, Defendant must set forth proper objections within ten (10) days of this order.

The Court notes that while certain of Defendants' responses are, as demonstrated above, overly broad, certain of Plaintiff's requests suffer from the same infirmity. The parties must confer to try and agree upon the proper scope of such overly broad requests. To assist Plaintiff in identifying which interrogatories are overbroad and/or disproportionate, the Court points to the following two interrogatories as examples:

> (Interrogatory No. 7) Identify every document concerning each of the Officer Defendants' employment with the County. DE 56-1;
>
> (Interrogatory No. 11) Identify any and all inmates who were housed along with Plaintiff for all areas of NCCC where Plaintiff was held on September 28, 2014 (and provide photographs clearly depicting each of their faces), and identify all documents pertaining thereto (including but not limited to their criminal history and why they were being held at NCCC).

DE 56-2. Interrogatory No. 7 is overly broad. Questions of that nature should be specific in time, and should list the type of documents Plaintiff is seeking. DE 56-2. Likewise, Interrogatory No. 11 (which requests all records of inmates housed in Plaintiff's housing areas on September 28, 2014) should be narrowed to request the identity of inmates housed in Plaintiff's cells or adjacent cells at the time of the incident forming the basis of this action. Moreover, the request for other inmates' criminal history and why they were being held in NCCC (Interrogatory No. 11) seeks information that is not within the scope of discovery and is certainly disproportionate to the needs of the case. Plaintiff is directed to revise his Interrogatories with an eye toward the standards referred to above, which place great emphasis on proportionality.

  b. <u>Redacted Signatures of Corrections Officers and Medical Personnel and Identities and Photographs of Inmates</u>

Plaintiff asserts that Defendants have, for no legitimate basis, redacted signatures of Correction Officers and medical personnel. They claim they have done so even in Plaintiff's medical records. Plaintiff argues that such redaction is inappropriate and makes it difficult to contact and/or subpoena potential witnesses in this case. Thus, Plaintiff seeks this Court to compel Defendants to remove these redactions and provide inmates' names, addresses, and telephone number, and other contact information if such witnesses are no longer in Nassau County's custody. Plaintiff cites to Murray, III, v. Fisher, 2009 WL 2843271 at *1-3 and King v. Conde, 121 F.R.D. 180, 189, 190-95 (E.D.N.Y. 1988), in support of his position.

Defendants argue that it is appropriate to redact the names of inmates who are nonparties to the suit because there are various security and privacy concerns at stake in particular when dealing with inmates that have cooperated with an investigation and being held pre-trial. The County cannot turn that information over absent a specific order from the Court.

First, with regard to identity of witnesses, the Plaintiff's Complaint makes clear that the incident alleged took place in a cell with three other inmates. Plaintiff alleges that these three inmates began striking Plaintiff at the direction of the correction officers. The identity of such witnesses is clearly discoverable. As are the identity of any inmates who had a view of the cell during the alleged assault on Plaintiff. Defendants have stated only that there are various privacy and safety concerns with releasing such identifying information; however, they have not offered any specific concerns regarding the identity of individual inmates. Should the Defendants believe there is a significant concern, such as the identification of a confidential informant, it may move for specific relief. Absent such concerns, the identity of inmate witnesses must be disclosed.

Similarly, "[t]o the extent that the plaintiffs have a good faith basis to believe that there were inmate witnesses to [the] incident, the defendants shall provide the requested [photographs

and] information to facilitate identification." <u>Nunez v. City of New York</u>, 2013 WL 2149869, at *7 (S.D.N.Y. 2013) (granting plaintiff's request for photographs of potential inmate witnesses). Should the Defendants believe there is a significant concern, such as the identification of a confidential informant, it may move for specific relief. Absent such concerns, the photographs and identities of potential inmate witnesses must be disclosed. The Court reminds Plaintiff that requests for identity of inmates must be specific, narrowly tailored, and with an eye toward proportionality. Plaintiff may request identity and current location of potential witnesses in his cell and the adjacent cells, but not all records of inmates housed in Plaintiff's housing areas.

As to medical records, the Court notes that Defendants stated they will provide Plaintiff's medical records upon obtaining a HIPAA release. Therefore, the Court will not address the production of Plaintiff's medical files.

To the extent that Defendants are redacting signatures of Correction Officers and Medical Personnel Identities, Defendant must provide an appropriate basis for doing so within ten (10) days of this order. In the event parties cannot agree as to whether such redaction is appropriate, the Parties may move for specific relief within ten (10) days of this order.

    c. <u>Identities of Individuals Who Used Force on the Plaintiff</u>

To the extent that the Defendants have knowledge of those who had physical contact with Plaintiff on the date of the incident forming the basis of this lawsuit, and that such information is not protected by privilege, Defendants must turn over the names of those individuals.

4. <u>Confidential Information</u>

The Court notes that there has been significant litigation regarding the confidentiality order in this case. Indeed, Plaintiff stated objections to many of Defendants' amendments to the confidentiality order, and specifically stated he feared that such order would require the

significant intervention by the Court to address confidentiality disputes. Plaintiff now asserts that Defendants are abusing the confidentiality order that the Court so ordered in the instant case. Parties are directed to confer with regard to the items in dispute. If they cannot reach a decision, they shall file a motion within ten (10) days of this order seeking a hearing on the items in dispute.

5. <u>Entry Upon Land</u>

Plaintiff's attorneys assert that they "need to see the location(s) within NCCC that bear upon Plaintiff's claims with our own eyes to get an actual spatial sense of the layout of the location(s) where the relevant events transpired, and to take our own photographs of what we deem relevant for use with our client, at depositions, and at trial." DE 56. Plaintiff offers two examples of protective orders entered by courts in the Southern District of New York which allowed for the inspection and photographing of two New York City Department of Corrections jails that could be used as a basis for an order allow access to the NCCC. These orders are annexed to Plaintiff's motion. DE 56.

Defendants argue that an "inspection would require a complete lockdown and stop all inmate movement in violation of inmates' rights, or removing all the current inmates out of their housing area." DE 57 at 2. Defendants therefore contend that a blue print of the layout for perspective and has photographs of the cell and of the area by the NCCC staff constitute an adequate response to the request to enter the facility. <u>Id.</u>

Plaintiff, without pointing to what authority, states that no inmates need be moved when he takes pictures. Plaintiff also states that privacy issues of the inmates are alleviated because he will not take photographs of any inmates while there. Thus, Plaintiff contents that "at most we

would require inmates to - for a matter of minutes - empty any particular cell / room while we were briefly in that cell / room and photographing it." DE 56 at 4.

This Court is not in a position to determine what is involved with taking pictures of the particular cell and area of the cell. The Court therefore directs Defendant County to produce a sworn statement in the form of an interrogatory response, within ten (10) days of this order, setting forth what would be involved in allowing the Plaintiff's counsel to enter the cell to take photographs. The letter shall further state whether the facility can specify a time (possibly when prisoners are outside for recreation or having meals) that Plaintiff's attorneys can photograph the cell without causing disruption. This Court will only direct that Plaintiff have access to the facility to take photographs if it is satisfied that it would not implicate safety concerns, or be unduly disruptive. To hold otherwise would be disproportionate to the case at hand. This is especially true because Defendants have offered to produce blueprints and pictures of the cell and surrounding areas.

6. <u>Sanctions and Reasonable Expenses</u>

Plaintiff argues that Defendants should be sanctioned for their non-production, their deficient production, and for producing documents only after Plaintiff moved to compel. Plaintiff points to Rule 37(a)(5)(A) in support of his argument that where documents are produced only after a motion to compel is filed mandates sanctions unless there is some good justification militating against such imposition. DE 56 (citing Fed. R. Civ. P. 37(a)(5)(A)). The text of the rule is set forth below:

> (5)Payment of Expenses; Protective Orders.
> (A) If the Motion Is Granted (or Disclosure or Discovery Is Provided After Filing). If the motion is granted--or if the disclosure or requested discovery is provided after the motion was filed--the court must, after giving an opportunity to be heard, require the party or deponent whose

15

> conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:
> > (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
> > (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or
> > (iii) other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37

At this time, the Court finds that the circumstances of this case make an award of expenses unjustified. As Defendants' opposition states, there has been significant turnover in the County, and the Defense Attorney now handling this case just recently returned from maternity leave. Moreover, some of Plaintiff's interrogatories are overly broad, and there have been failures to confer. Additionally, this litigation was not held up solely because of Defendants' delayed responses, but also because of significant litigation regarding the confidentiality order.

Plaintiff further asserts that the Court should deem Defendants objections waived because Defendants failed to object to the interrogatories in a timely manner. Rule 33(b)(4) allows the Court to exercise its discretion in determining whether to deem objections waived based on a Defendants' failure to timely object. For the same reasons the Court denies Plaintiff's request for sanctions, the Court denies the Plaintiff's request to deem Defendants' objections waived. See Shahzad v. Cty. of Nassau, 2014 WL 4805022, at *4 (E.D.N.Y. 2014).

The Court warns Defendants that they must now comply with the rulings of this order. This Court will not tolerate delay tactics or an abuse of the confidentiality order in place. Nor will the Court tolerate inapplicable boilerplate objections – or objections that could have been avoided by simply conferring with Plaintiff. Defendants are directed to comply with this order

within ten (10) days. Moreover, the Court will revisit the question of sanctions if it determines that (1) Defendants are abusing the confidentiality order, or (2) the defendants are asserting objections that are not made in good faith. See Medina v. Gonzalez, 2010 WL 3744344, at *26 (S.D.N.Y. 2010).

CONCLUSION

For the reasons set forth above, Plaintiff's motion to compel discovery, herein Docket No. 56, is decided as follows:

(1) The County is directed to turn over a photograph of Bazante within ten days of his order;

(2) At this juncture, Sheriff Sposato is a named Defendant and therefore must individually verify his responses to the Plaintiff's interrogatories.

(3) Defendants are directed to reevaluate their objections, and provide Plaintiff with either responsive answers and/or objections with ten (10) days of this order. To the extent that Defendants are unsure of what certain language means (for example the term "incident"), DE 56-2, Defendants shall confer with Plaintiff to obtain clarity rather than object on such basis. To the extent that such questions are overly broad, Defendant shall confer with Plaintiff to obtain clarity. In conferring, Plaintiff is directed to revise his Interrogatories and Document Requests with an eye toward compliance with the Federal Rules of Civil Procedure, which, as noted above, places great weight on proportionality of discovery. If clarity cannot be reached, Defendant must set forth proper objections within ten (10) days of this order.

(4) To the extent that Defendants are asserting privilege objections, they are directed to produce a proper privilege log within ten (10) days of this order, and set forth the privilege(s) being asserted as to each document. Defendants must state with specificity the privilege asserted for

each document, and the basis of each objection. Defendants shall must set forth how each document and/or response withheld satisfies the criteria for asserting such privilege.

(5) Absent specific individualized concerns, the identity of inmate witnesses and photographs of potential inmate witnesses must be disclosed. Should the Defendants believe there is a significant concern, such as the identification of a confidential informant, it may move for specific relief.

(6) To the extent that Defendants are redacting signatures of Correction Officers and Medical Personnel Identities, Defendant must provide an appropriate basis for doing so within ten (10) days of this order or decide not to redact such information.

(7) To the extent that the Defendants have knowledge and that information is not protected by privilege, they must turn over the names of the individuals believed to have used force on Plaintiff.

(8) Parties are directed to confer with regard to whether they can reach an agreement as to designating disputed items as confidential or non-confidential. If they cannot reach a decision, they shall file a motion within ten (10) days of this order seeking a hearing on the items in dispute and/or an in camera review by this Court.

(9) Plaintiff is directed to narrow requests for documents by setting forth specific time frames. Such questions should be specific in time, and should list the type of documents Plaintiff is seeking. All discovery demands and interrogatories should be reevaluated to avoid overly broad requests seeking information that is beyond that required to be produced under the Federal Rules.

(10) Defendant County is directed to produce a sworn statement in the form of an interrogatory, within ten (10) days of this order, setting forth what would be involved in allowing the Plaintiff's counsel to enter the cell to take photographs to support their assertion of the burden and security concerns allowing Plaintiff's attorney to visit. The letter shall further state whether the facility

can specify a time (possibly when prisoners are outside for recreation or having meals) that Plaintiff's attorneys can photograph the cell without causing such a disruption. Such statement will allow this Court to evaluate whether to allow entry or whether Defendant's offer of blueprints is sufficient. The Court directs Defendant that any such blueprint or floor plan must be accompanied by a certification that it properly depicts the area at issue as of the time when Plaintiff was housed therein.

(12) The Court denies Plaintiff's motions for sanctions at this time.

SO ORDERED

Dated: Central Islip, New York
August 18, 2017

                                           /s/ Anne Y. Shields
                                           ANNE Y. SHIELDS
                                           United States Magistrate Judge