UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
CHRISTOPHER GRIEF,

                     Plaintiff,                        **MEMORANDUM AND OPINION**

     -against-                                        CV 15-7240 (JS)(AYS)

NASSAU COUNTY; SHERIFF
MICHAEL SPOSATO, CO ALBERTO BAZANTE,
CO ANGELO MURO, CO JARET CARBONE,
CO KEVIN SENIOR, CO MICHAEL O'MALLEY,
SGT. "FNU" [First Name Unknown] WENSDORFER
[precise spelling unknown], individually and in
their official capacities,

                     Defendants.
------------------------------------------------------------------X

**ANNE Y. SHIELDS, United States Magistrate Judge:**

        This is a civil rights action in which Plaintiff, Christopher Grief ("Grief" or "Plaintiff"), alleges that he was injured by Defendants, Nassau County, Sheriff Michael Sposato, Corrections Officer ("CO") Alberto Bazante, CO Angelo Muro, CO Jaret Carbone, CO Kevin Senior, CO Michael O'Malley, and Sergeant "FNU" (First Name Unknown) Wensdorfer (collectively, "Defendants"). Plaintiff seeks relief for injuries alleged to have been suffered as a result of being assaulted, battered, and otherwise abused while housed at the Nassau County Correctional Center ("NCCC") on or about September 28, 2014, in violation of his civil rights.

        Presently before the Court is Plaintiff's motion to amend his Complaint for a third time to add an eighth cause of action for violation of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act. Plaintiff's motion also seeks to supplement the factual allegations contained in the currently operative Second Amended Complaint. Defendants oppose the motion. For the reasons set forth herein, Plaintiff's motion is denied.

1

BACKGROUND

Unless otherwise noted, the facts set forth herein are taken from Plaintiff's proposed Third Amended Complaint and are accepted as true for purposes of the instant Memorandum and Opinion.

On or about September 23, 2014, Plaintiff was arrested and, following his first court appearance, was placed in custody at the NCCC. (3d Am. Compl. ¶ 16.) Plaintiff requested to be placed in protective custody. (Id.) Plaintiff, who suffers from a variety of mental health conditions, was extremely anxious and was placed on suicide watch. (Id.)

On or about September 28, 2014, Plaintiff was observed in a potentially suicidal act in his one-person cell and was taken for medical treatment. (Id. ¶ 18.) Plaintiff was placed in a "suicide smock" and designated for constant observation. (Id.)

That evening, Plaintiff was awoken by corrections officers and informed that he was being moved. (Id. ¶ 19.) Plaintiff was placed in a cell with three inmates, none of whom were classified as being in protective custody. (Id.) According to Plaintiff, Defendant Weisdorfer[1] directed that Plaintiff be moved to the new cell. (Id. ¶ 20.)

Following his placement in the new cell, Plaintiff began telling the Defendant corrections officers that he was in protective custody, was extremely anxious, and was not safe in the new cell. (Id. ¶ 25.) Thereafter, one of the inmates in Plaintiff's new cell asked the Defendant corrections officers if they wanted the inmates to "rough up Plaintiff," to which one of the Defendant corrections officers answered in the affirmative. (Id. ¶ 26.) One of the inmates then began striking Plaintiff, at which point Plaintiff fell to the floor and covered his face. (Id.)

---

[1] Although Defendant Weisdorfer was sued herein as "Wensdorfer," it appears from the proposed Third Amended Complaint that the correct spelling is "Weisdorfer." (3d Am. Compl. ¶ 13.)

2

One of the Defendant corrections officers entered the cell and sprayed Plaintiff in the face with mace. (Id. ¶ 27.) The same corrections officer then handcuffed Plaintiff's legs and hands, with Plaintiff's hands behind his back. (Id.) The same corrections officer then kicked Plaintiff hard in the area of his left eye at least two times. (Id.)

As a result of this altercation, Plaintiff sustained a detached retina. (Id. ¶ 28.) In December 2014, Plaintiff underwent surgery on his left eye. (Id. ¶ 29.) Notwithstanding the surgery, Plaintiff's vision in his left eye is distorted, blurry, cloudy, and lacks depth perception. (Id.)

Plaintiff commenced the within action on December 18, 2015. Plaintiff has twice amended his Complaint – first, on October 13, 2016 (DE [27],) and again, on September 21, 2017. (DE [67].) Discovery has been long and protracted, with numerous disputes requiring this Court's intervention. Following a number of extensions of the parties' discovery schedule, fact discovery concluded on July 22, 2020 and expert discovery concluded on February 26, 2021. Plaintiff now seeks to amend his complaint a third time, pursuant to Federal Rule of Civil Procedure 15(a), to add an eighth cause of action for violation of the ADA and the Rehabilitation Act. Defendants oppose the motion.

## DISCUSSION

I.   Legal Standard

Motions to amend are governed by Rule 15 of the Federal Rules of Civil Procedure. Where, as here, leave of court is required to amend, the Court has broad discretion to grant such leave "freely," "when justice so requires." Fed. R. Civ. P. 15(a)(2). Because amendments "tend to facilitate a determination on the merits," they are "generally favored." Zucker v. Porteck Global Servs., Inc., No. 13-CV-2674, 2015 WL 6442414, at *4 (E.D.N.Y. Oct. 23, 2015)

(citation omitted).  However, motions to amend are property denied where they are founded in "undue delay, bad faith, futility, or prejudice to the non-moving party . . . ."  Mendez v. U.S. Nonwovens Corp., 2 F. Supp. 3d 442, 451 (E.D.N.Y. 2014).  The non-movant bears the burden of demonstrating that the proposed amendment is improper.  See Blaskiewicz v. County of Suffolk, 29 F. Supp. 2d 134, 137 (E.D.N.Y. 1998) (citations omitted).

II.      Disposition of Plaintiff's Motion

Plaintiff's motion is denied on the basis of undue delay and the resulting prejudice to Defendants.  This case was commenced more than five years ago and fact discovery closed more than seven months ago.  Permitting Plaintiff to add another cause of action when this case is essentially trial-ready would impose an undue burden on Defendants.

"[M]ere delay . . . absent a showing of bad faith or undue prejudice, does not provide a basis for the district court to deny the right to amend."  Zucker, 2015 WL 6442414, at *4 (citations and internal quotation marks omitted).  "However, a motion to amend filed after discovery has been closed 'may constitute an inordinate delay even if certain testimony adduced during discovery purportedly gives the opposing party full and fair notice of a new theory not alleged in the operative complaint.'"  Id. (quoting Hutter v. Countrywide Bank, N.A., 41 F. Supp. 3d 363, 371 (S.D.N.Y. 2014)) (additional citation and internal quotation marks omitted).

Here, Plaintiff asserts that he did not become aware of the basis for his proposed ADA and Rehabilitation Act claim until the deposition of Defendant Weisdorfer was conducted on November 11, 2019.  However, Plaintiff did not provide Defendant with notice of his intent to amend until after his deposition was conducted on March 2, 2020.  Moreover, Plaintiff did not advise the Court of his intention to move to amend until July 30, 2020 – more than seven months after he became aware of the purportedly new information and after the close of fact discovery.

4

As Defendants point out in their opposition, permitting Plaintiff to amend at this late juncture would introduce considerable new factual allegations, which would require further discovery to be conducted and would further delay this already protracted litigation.

Moreover, granting Plaintiff leave to amend would unduly prejudice Defendants. "One of the fundamental considerations in determining whether to allow an amendment of the pleading is whether such amendment would prejudice defendants." Zucker, 2015 WL 6442414, at *4 (citing Portelos v. City of New York, No. 12-CV-3141, 2015 WL 5475494, at *2 (E.D.N.Y. Sept. 15, 2015). In determining whether a non-movant will be prejudiced by a proposed amendment, courts consider whether the new claim would: "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." Portelos, 2015 WL 5475494, at *2 (quoting Monohan v. N.Y.C. Dep't of Corr., 214 F.3d 275, 284 (2d Cir. 2000)).

Permitting Plaintiff to amend herein would require Defendants to re-depose Plaintiff – which would require travel to the federal prison in Ohio where Plaintiff is currently housed – to explore the factual allegations raised by Plaintiff's proposed new claim. "Re-deposing [P]laintiff on the details of the [new] claim would cause [D]efendants to expend additional resources and further delay the resolution of this case." Chepilko v. City of New York, No. 06 CV 5491, 2010 WL 3926186, at *2 (E.D.N.Y. Sept. 8, 2020), adopted by, 2010 WL 3909211, at *1 (E.D.N.Y. Sept. 27, 2020). In addition, expert discovery ended on February 26, 2012. Introducing a new claim as to Plaintiff's alleged disabilities and the impact they have on Plaintiff's life activities will invariably necessitate the retention of new experts on both sides, again at significant expense to Defendants, and thereby further delaying a resolution of this action.

Based on the foregoing, the Court finds that permitting Plaintiff to amend his Complaint a third time, at this late juncture, would unfairly prejudice Defendants. Accordingly, Plaintiff's motion to amend is denied.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to amend is denied.

**SO ORDERED.**

Dated: Central Islip, New York
March 5, 2021

/s/ Anne Y. Shields
Anne Y. Shields
United States Magistrate Judge