UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------X
CHRISTOPHER GRIEF,

            Plaintiff,

       -against-                 <u>MEMEORANDUM & ORDER</u>
                                        15-CV-7240(JS)(AYS)

NASSAU COUNTY;
SHERIFF MICHAEL SPOSATO;
C.O. ALBERTO BAZANTE;
C.O. ANGELO MURO;
C.O. JARET CARBONE;
C.O. KEVIN SENIOR;
C.O. MICHAEL O'MALLEY;
SGT. "FNU" [First Name UNKNOWN]
WENSDORFER[1], individually and in
their official capacities,
            Defendants.
-------------------------------------X
APPEARANCES
For Plaintiff:      Jeffrey A. Rothman, Esq.
                  305 Broadway, Suite 100
                  New York, New York  10007

For Defendants:     Alexander E. Sendrowitz, Esq.
                  Quatela Chimeri PLLC
                  888 Veterans Memorial Highway, Suite 530
                  Hauppauge, New York  11788


SEYBERT, District Judge:

       Plaintiff Christopher Grief ("Plaintiff" or "Grief")

objects to two orders entered by Magistrate Judge Anne Y. Shields:

(1) the March 5, 2021 order denying Plaintiff's request to amend

---

[1]  According to Plaintiff, this Defendant's name is Richard
Wiesdorfer.  (<u>See</u> Amend Support Memo, ECF No. 128, at 1 n.1.)
Herein, he shall be referred to as "Defendant Wiesdorfer" or
"Wiesdorfer".  The Clerk of Court is directed to amend the case
caption with this updated information.

his Compliant for a third time (hereafter, the "No-Amend Order")
(see ECF No. 136)[2]; and (2) the April 30, 2021 order denying
Plaintiff's motion seeking spoliation sanctions (hereafter, the
"No-Sanction Order") (see ECF No. 154). (See No-Amend Obj., ECF
No. 138[3]; No-Sanction Obj., ECF No. 155). Defendants oppose
Plaintiff's Objections to the Magistrate Judge's Orders. (See No-
Amend Opp'n, ECF No. 147; No-Sanction Opp'n, ECF No. 159.) For
the following reasons, Plaintiff's: respective Objections are
OVERRULED; the No-Amend Order and No-Sanctions Order are AFFIRMED;
and, Motions for Reconsideration (ECF Nos. 138, 155) are DENIED.

<u>BACKGROUND</u>

The Court assumes the parties' familiarity with this
civil rights action in which Grief alleges that he was injured by
the Defendants, resulting in his sustaining a detached retina in
his left eye and losing normal vision in that eye. (See, e.g.,
No-Amend Order at 2-3; Second. Am. Compl., ¶¶ 17-24.) Plaintiff
seeks compensatory and punitive damages. (See Second Am. Compl.,
Prayer for Relief.) As Magistrate Judge Shields observed:

> Plaintiff commenced the within action on
> December 18, 2015 [and] has twice amended his
> Complaint – first, on October 13, 2016, and

---

[2] Herein, the Court will cite to a document's internal page number(s).

[3] Despite noting Magistrate Judge Shields did not style her No-Amend Order as a report and recommendation, Plaintiff nonetheless styled his response as objections to the Magistrate Judge's ruling. (See ECF No. 139.)

again, on September 21, 2017.  Discovery has
been long and protracted, with numerous
disputes requiring this Court's intervention.
Following a number of extensions of the
parties' discovery schedule, fact discovery
concluded on July 22, 2020 and expert
discovery concluded on February 26, 2021.

(No-Amend Order at 3 (citing First Am. Compl., ECF No. 27, and

Second Am. Comp., ECF No. 67).)  Magistrate Judge Shields has been

the assigned magistrate for this case since its inception.  (See

Case Docket, Dec. 21, 2015 Case Assignment.)

I.   The Amend Motion

As to Plaintiff's motion to amend his Complaint a third

time (hereafter, the "Amend Motion") (see ECF No. 126; see also

Amend Support Memo, ECF No. 128) to add a cause of action for

violations of the Americans with Disabilities Act ("ADA") and the

Rehabilitation Act (hereafter, the "Proposed New Claim"), which

the Defendants opposed, this Court explicitly referred the motion

to Magistrate Judge Shields "for a DECISION." (See Feb. 5, 2021

Elec. ORDER REFERRING MOTION (citing JS Individual Rule III(H)(1),

which Rule specifically includes "[r]equests to amend the

pleadings" in a list of non-dispositive motions as referred to the

assigned magistrate judge).)  In denying the Amend Motion,

Magistrate Judge Shields recognized that amendments are generally

favored and properly stated that the party opposing amendment bears

the burden of demonstrating the proposed amendment is not

warranted.  Given the facts of this case, the Magistrate Judge

3

denied the Amend Motion "on the basis of undue delay and the resulting prejudice to Defendants." (No-Amend Order at 4.) Observing that mere delay alone is an insufficient reason to deny Grief's Amend Motion, because Grief's delay would "require further discover to be conducted and would further delay this already protracted litigation," the Magistrate Judge found Defendants would be unduly prejudiced if the motion were granted. (Id. at 5.) For example, permitting Plaintiff a third amendment would require Defendants to re-depose Plaintiff, which would cause Defendants to expend additional resources and further delay the resolution of this case, as well as "necessitate the retention of new experts on both side, again at the significant expense to Defendants, and thereby further delay[] a resolution of this action." (Id.) Thus, finding "permitting Plaintiff to amend his Complaint a third time, at this late juncture, would unfairly prejudice Defendants," Magistrate Judge Shields denied the Amend Motion. (Id. at 6.)

II. The Sanctions Motion

As to Plaintiff's motion for sanctions based upon the Defendants' alleged spoliation of colored, headshot photographs of Grief purportedly taken after the alleged underlying kicking incident (hereafter, the "Forward Colored Headshot", "Profile Colored Headshot" and, collectively, the "Colored Headshots"), after oral arguments on the sanctions motion, Magistrate Judge

Shields denied the requested alternative sanctions of striking Defendants' Answer, directing the issuance of an adverse inference jury instruction at trial, and awarding attorneys' fees incurred in making the Sanctions Motion.[4]   (See No-Sanctions Order at 1.) Noting that determining the appropriate sanction for spoliation is (1) vested within the trial judge's discretion, (2) to be assessed on a case-by-case basis, and (3) is to be the least harsh option that provides an adequate remedy (see id. at 2), the Magistrate Judge determined she neither had the power to strike the Answer nor issue an adverse inference instruction to the jury (see id.). Rather, she found "Plaintiff has made a sufficient showing to explore at trial whether the Defendants had a policy with respect to the taking of pictures of inmates that was violated in this action," but that "such a ruling is subject to the District Judge's discretion to make appropriate rulings at trial." (Id. (stating further that "[i]t will be up to the District Judge and jury to determine the weight of this evidence with respect to Plaintiff's claims of injury").)  Magistrate Judge Shields found no basis to recommend the striking of Defendants' Answer and summarily denied Plaintiff's request for attorneys' fees.  (Id. at 2-3.)

---

[4]  The No-Sanction Order was re-issued in written form on April 30, 2021, after technical issues with the audio recording preventing Magistrate Judge Shields' April 22, 2021 oral ruling from being transcribed.  (See No-Sanction Order at 1.)

Plaintiff timely objected to both the No-Amend Order and the No-Sanctions Order pursuant to Rule 72 of the Federal Rules of Civil Procedure.

DISCUSSION

I.   RELEVANT LEGAL STANDARDS

A.   Rule 72(a)

Pursuant to Federal Rule of Civil Procedure 72(a), a party has the option of objecting to a magistrate judge's order concerning any non-dispositve pretrial matter.  See FED. R. CIV. P. 72(a).  The district judge "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law."  Id.; see also 28 U.S.C. § 636(b)(1)(A) ("A judge of the court may reconsider any [non-dispositive] pretrial matter . . . where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law.").  "An order is 'clearly erroneous' only if a reviewing court, considering the entirety of the evidence, is left with the definite and firm conviction that a mistake has been committed; an order is 'contrary to law' when it fails to apply or misapplies relevant statutes, case law, or rules of procedure."  Centro De La Comunidad Hispana De Locust Valley v. Town of Oyster Bay, 954 F. Supp. 2d 127, 139 (E.D.N.Y. 2013), aff'd, 868 F.3d 104 (2d Cir. 2017) (quotations and citations omitted).  "This standard is highly deferential, imposes a heavy burden on the objecting party, and only permits

reversal where the magistrate judge abused his discretion." Ahmed v. T.J. Maxx Corp., 103 F. Supp. 3d 343, 350 (E.D.N.Y. 2015) (quotations and citations omitted); see also In re Hulley Enters. Ltd., 400 F. Supp. 3d 62, 70 (S.D.N.Y. 2019) ("Magistrate judges are afforded broad discretion in resolving nondispositive disputes and reversal is appropriate only if their discretion is abused. . . . A party seeking to overturn a magistrate judge's decision thus carries a heavy burden." (cleaned up)).

   B.   Amending Pleadings

      Requests to amend pleadings are governed by Rule 15 of the Federal Rules of Civil Procedure.  As relevant here, where prior amendments to the Complaint have occurred, "a party may amend its pleadings only with . . . the court's leave.  The court should freely give leave when justice so requires."  FED. R. CIV. P. 15(a)(2).  Though liberally granted since amendments "tend to facilitate a determination on the merits," Zucker v. Porteck Global Servs., Inc., No. 13-CV-2674, 2015 WL 6442414, at *4 (E.D.N.Y. Oct. 23, 2015), Rule 15 motions to amend "may properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" Ruotolo v. City of N.Y., 514 F.3d 184, 191 (2d Cir. 2008) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)).  However, delay without

more is not a basis to deny a motion to amend; rather, it must be coupled with a showing of bad faith or undue prejudice.  See id. (first quoting State Teachers Ret. Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981); then citing Charles Allen Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil 2d, § 1487, at 613 (1990 & 2007 Supp.) (citing prejudice to the opposing party as "the most important factor" and "the most frequent reason for denying leave to amend")).  Indeed, "[p]rejudice to the nonmovant . . . is the 'most important' factor."  Lubavitch of Old Westbury, Inc. v. Inc. Vill. of Old Westbury, N.Y., No. 08-CV-5081, 2021 WL 4472852, at *17 (E.D.N.Y. Sept. 30, 2021) (quoting Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993)).  An "[a]mendment may be prejudicial when, among other things, it would require the opponent to expend significant additional resources to conduct discovery and prepare for trial or significantly delay the resolution of the dispute."  AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A., 626 F.3d 699, 725–26 (2d Cir. 2010) (internal quotation marks omitted).

   C.   Spoliation Sanctions

      "The Second Circuit has defined spoliation as 'the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation.'"  Raymond v. City of N.Y., No. 15-CV-6885, 2020 WL 1847556, at *5 (S.D.N.Y. Apr. 13, 2020)

(quoting West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir. 1999)).  If deemed a discovery order violation, sanctions for spoliation may be imposed pursuant to Rule 37 of the Federal Rules of Civil Procedure; otherwise, the court may impose spoliation sanctions pursuant to its inherent authority to manage its own affairs.  See Taylor v. City of N.Y., 293 F.R.D. 601, 609 (S.D.N.Y. 2013) (citing Fed. R. Civ. P. 37(b), and Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 106-07 (2d Cir. 2002)).  "[C]lear and convincing evidence of bad faith is a prerequisite to an award of sanctions under the court's inherent power."  Yukos Cap. S.A.R.L. v. Feldman, 977 F.3d 216, 235 (2d Cir. 2020).  Moreover, "[i]n situations where sanctions are warranted, district courts have broad discretion in 'crafting an appropriate sanction for spoliation.'"  Alter v. Rocky Point Sch. Dist., No 13-CV-1100 (JS)(AKT), 2014 WL 4966119, at *5 (quoting West, 167 F.3d at 779); see also Fujitsu Ltd. v. Fed. Express Corp., 247 F.3d 423, 436 (2d Cir. 2001) ("The determination of an appropriate sanction for spoliation, if any, is confined to the sound discretion of the trial judge, and is assessed on a case-by-case basis.").  For example, "a court may impose the sanction of an adverse inference, which is 'an inference that the evidence would have been unfavorable to the party responsible for its destruction.'" Raymond, 2020 WL 1847556, at *5 (quoting Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 216 (S.D.N.Y. 2003)).  In any event, when

determining a spoliation motion, "a court should impose the least harsh sanction that can provide an adequate remedy." Hawley v. Mphasis Corp., 302 F.R.D. 37, 46 (S.D.N.Y. 2014) (internal quotations and citation omitted).

If a party seeks an adverse inference sanction for spoliation, the following must be established:

> (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a "culpable state of mind"; and (3) that the missing evidence is "relevant" to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

Raymond, 2020 WL 1847556, at *5 (quoting Residential Funding, 306 F.3d at 107). "In this circuit, a 'culpable state of mind' for purposes of a spoliation inference includes ordinary negligence. When evidence is destroyed in bad faith (i.e., intentionally or willfully), that fact alone is sufficient to demonstrate relevance. By contrast, when the destruction is negligent, relevance must be proven by the party seeking the sanctions." Zubulake, 220 F.R.D. at 216 (citing Residential Funding, 306 F.3d at 108, 109). "Relevance is construed broadly, and the requested [evidence] must be more than a mere 'fishing expedition'." Raymond, 2020 WL 1847556, at *5 (quoting Alter, 2014 WL 4966119, at *5).

10

II.  <u>THE INSTANT ACTION</u>

As an initial matter, in considering Plaintiff's objections to the No-Amend Order and the No-Sanctions Order, in addition to considering those Orders, Plaintiff's Objections thereto and Defendants' respective oppositions, the Court has undertaken a <u>de novo</u> review of the underlying motion papers related to each Order.  The Court has also considered the history of this case, including Magistrate Judge Shields' extensive involvement with and in-depth knowledge of said case.

A.  <u>The No-Amend Order</u>

In objecting to Magistrate Judge Shields' No-Amend Order, Plaintiff argues there was no undue delay in his notifying Defendants of his desire to add the Proposed New Claim and Defendants will not suffer any significant prejudice from the amendment.  The crux of Grief's argument is that "[i]t was Sergeant Wiesdorfer's [deposition] testimony, in conjunction with Plaintiff's own testimony at his [subsequent] deposition, that crystalized Plaintiff's counsel's determination that the [Proposed New Claim] should be asserted as an additional and/or alternate theory of liability."  (No-Amend Obj. at 6.)  He contends Defendants "knew full-well that Plaintiff's mental health disabilities are central to the facts and issues in this case prior to his deposition, and elicited plenty of information in that regard at his deposition (including through the use of his mental

11

health records) that should easily cause them to conclude that Plaintiff is a qualified individual with mental health disabilities that impair major life activity." (Id. at 9.) He further maintains that Magistrate Judge Shields erred in stating that allowing the Proposed New Claim "will invariably necessitate the retention of new experts on both sides, . . . at significant expense to Defendants, and . . . further delay[] a resolution of this action" (No-Amend Order at 5), since "it is so clear that Plaintiff is a qualified individual with a disability under the ADA and Rehab Act, [that] there is nothing invariable or inevitable about the need for further expert witnesses stemming from Plaintiff's assertion of [the Proposed New Claim]." (No-Amend Obj. at 10 n.10.) Grief also relies upon the operative Second Amended Complaint as a basis for Defendants having already been put on notice of the Proposed New Claim. (See id. at 11-12.)

Plaintiff is unable to meet his heavy burden to overturn the No-Amend Order. This Court is not left with the definite and firm conviction that a mistake has been committed or that Magistrate Judge Shields misapplied Rule 15(a)(2). As is apparent from her ruling, Magistrate Judge Shields carefully considered Grief's amendment motion seeking to add the Proposed New Claim together with corresponding supplemental factual allegations. Given her expansive experience with this case, Magistrate Judge Shields was well-versed in its history when she determined that

Grief's delay in seeking to amend his Complaint a third time would unduly prejudice Defendants.  Her reasoning is sound:  Grief contends he become aware of the basis for the Proposed New Claim only at the November 11, 2019 deposition of Defendant Weisdorfer, but waited until after his March 2, 2020 deposition to give Defendants notice of his intent to amend, and "did not advise the Court of his intention to move to amend until July 30, 2020 – more than seven month after he became aware of the purportedly new information and after the close of fact discovery."  (No-Amend Order at 4.)  The Magistrate Judge determined this delay would be unduly prejudicial to Defendants, i.e., requiring re-deposing of Plaintiff and retaining new experts, at significant cost to Defendants, and causing further delay of this action's resolution.[5] (See No-Amend Order at 5.)

        While, in his Objection, Plaintiff highlights the various instances he asserts put Defendants on notice of the

_____

[5]  This Court recognizes that Plaintiff is no longer housed in a correctional facility in Ohio, but is currently incarcerated at the Metropolitan Detention Center in Brooklyn.  (See No-Amend Obj. at 10 n.9.)  As Defendants aptly argue, "Regardless of where Plaintiff is physically located, re-deposing Plaintiff and conducting further discovery in connection with the new factual allegations presented in the proposed Third Amended Complaint will require Defendants to expend significant additional resources, resulting in undue prejudice."  (No-Amend Opp'n at 6 (citing Portelos v. City of N.Y., No. 12-CV-3141, 2015 WL 5475494, at *2 (E.D.N.Y. Sept. 15, 2015); further citation omitted).)  Thus, while Plaintiff currently being located within the District is likely to eliminate certain costs associated with re-deposing Plaintiff, it is not enough to find error with the No-Amend Order.

Proposed New Claim, which he contends pre-dated the November 2021 Weisdorfer deposition and Grief's March 2020 deposition, the same would be true as to Plaintiff himself.  Indeed, if it were the case with Defendants, it must have also been true that Plaintiff "knew full well that [his] mental health disabilities were an integral part of this case prior to [his] deposition, based upon [Plaintiff] previously having . . . plead that [he] was on suicide watch and extremely anxious at the time of the incident, and from the rest of the record developed to that date . . . ."  (No-Amend Obj. at 6-7.)  This would also include "Plaintiff's medical records which include his mental health diagnoses" upon which Plaintiff also relies to advance his amendment argument.  (Id. at 7; see also id. at 9 (reiterating argument that "Defendants . . . knew full-well that Plaintiff's mental health disabilities are central to the facts and issues in this case prior to his deposition, and elicited plenty of information in that regard at his deposition (including through the use of his mental health records) . . .").)  Hence, more than Defendants, if it were as Plaintiff purports, he should have known from the outset that he had a basis to plausibly plead the Proposed New Claim.  At the very least, then, the Proposed New Claim could have been included in the Second Amended Complaint.  (See id. at 11; see also id. at 12 (arguing "the pleadings have always put the Defendants on notice that this case is in significant part about the Defendants placing a particularly

vulnerable inmate, who was undergoing great anxiety and on suicide watch, into a cell with three other inmates who were violent . . .".).)   However, given Plaintiff's representation that he was unaware of the basis for the Proposed New Claim until November 11, 2019, and did not give Defendant notice of his intention to amend the Second Amended Compliant to raise this Proposed New Claim until April 30, 2020 (see Amend Support Memo, ECF No. 128, at 2), and Plaintiff's failure to notify the Court of this intention until July 30, 2020, after the close of discovery, his so-called "should-have-known" argument rings hollow.

In sum, considering (1) Magistrate Judge Shields' protracted and significant involvement in this case, (2) the underlying amendment motion papers, and (3) Plaintiff's objections and Defendants' opposition thereto, this Court is not left with the definite and firm conviction that a mistake has been committed by the Magistrate Judge in making her ruling or that said ruling is contrary to law.   Magistrate Judge Shields' well-reasoned No-Amend Order was properly based upon the record and well within her discretion.   See Ruotolo, 514 F.3d at 191 (holding it "well within the bounds of [the district court's] discretion to deny a motion to amend where plaintiff's delay was "inexcusable given the previous opportunities to amend, and the defendants' burden and prejudice").   To the extent not directly addressed, the Court has

considered the Plaintiff's remaining arguments and finds them to be without merit.  Accordingly, the No-Amend Order is affirmed.

     B.    The No-Sanctions Order[6]

          In objecting to Magistrate Judge Shields' No-Sanctions Order, Plaintiff alleges error based upon the Magistrate Judge: (1) referring only to the Forward Colored Headshot, but consideration of that Headshot with the Profile Colored Headshot "would show clearly that Plaintiff had suffered a visible injury to his left eye" (No-Sanctions Obj. at 4); (2) declining to issue a recommendation that sanctions be imposed (see id. (arguing "[i]t was clear error and contrary to law to simply kick the can down the road to trial where Plaintiff has made such a significant showing concerning the Defendants' spoliation and the prejudice to

---

[6]    In her No-Sanctions Order, Magistrate Judge Shields stated, "Plaintiff does not request a discovery sanction." (No-Sanctions Order at 2.)  Indeed, there is no mention of Federal Rule of Civil Procedure 37 in Plaintiff's spoliation sanctions motion papers. (See ECF Nos. 140, 142, 145.)  To the extent Plaintiff sought sanctions pursuant to the Court's inherent power, he has failed to either address or put forth any clear and convincing evidence of Defendants' alleged bad faith.  See, e.g., Kang v. Perri, No. 20-CV-0746, 2021 WL 4487876, at *5 (E.D.N.Y. Sept. 30, 2021) (discussing the standard for imposing sanctions pursuant to the court's inherent power); see also Hice v. Lemon, No. 19-CV-4666, at *7-8 (E.D.N.Y. Nov. 17, 2021) (articulating the standard for imposing sanctions pursuant to the court's inherent power and stating "the imposition of sanctions pursuant to the Court's inherent power requires a finding of bad faith" (emphasis added; citation omitted)).  Thus, given Plaintiff's failure to present requisite "clear and convincing evidence" of Defendants' "bad faith", Yukos, 977 F.3d at 235, on that basis alone, Magistrate Judge Shields' No-Sanctions Order would be proper.

[Plaintiff] from that spoliation")); and (3) "without explanation denied Plaintiff's request for attorneys' fees in connection with the spoliation sanctions motion" (id. at 5).  In opposition, Defendants argue that: (a) as to the Profile Colored Headshot: (i) it is speculation whether said Headshot exists; and (ii) such speculation is an insufficient ground upon which to base a spoliation sanction; (b) as to declining to issue a sanctions recommendation: Plaintiff has not articulated how the Magistrate Judge was definitively mistaken in not recommending sanction especially since Plaintiff's expert merely surmised that Colored Headshots would likely assist him in determining whether there had been recent blunt trauma to Grief's left eye versus relying upon the provided forward-facing, black-and-white headshot photograph; and (c) as to attorneys' fees: Magistrate Judge Shields was within her discretion to deny those fees, especially since she denied Plaintiff's underlying spoliation sanctions motion, which distinguishes this case from those relied upon by Plaintiff where the underlying spoliation sanction motions had been granted.  (See No-Sanctions Opp'n at 5-7.)

The Court disagrees with Plaintiff's contention that he has made a significant showing of Defendants' spoliation and resulting prejudice to Plaintiff.  Rather, having considered the underlying submissions on Plaintiff's spoliation sanctions motion, the Court agrees with the Magistrate Judge that, at this juncture,

Plaintiff's requested sanctions are not warranted, but that Grief may be entitled to an adverse inference jury instruction after the record is more fully developed.

Even assuming, arguendo, that the duty to preserve evidence was triggered here, the absence of (1) a colored version of Grief's Front Headshot taken after the alleged kicking incident, and (2) any profile headshot photo taken after said incident, are not, as Plaintiff argues, "strongly suggestive of the Defendants purposefully discarding post-incident photographs from the date of the incident that would depict trauma to Plaintiff's left eye that one of the Corrections Officer Defendants caused by kicking Plaintiff in his left eye." (Sanction Support Memo, ECF No. 142, at 10.)  Rather, as Defendants aptly counter, "Plaintiff has not proffered any evidence that the alleged 'missing' profile photograph ever existed in the first place," but 'merely speculates that the photographs were 'likely' taken and spoliated." (Sanction Opp'n, ECF No. 146-6, at 7.)  Cf. Warren v. City of N.Y. Dep't of Corr. Med. Staff, No. 17-CV-1125, 2021 WL 1163105, at *14 (E.D.N.Y. Mar. 26, 2021) ("[T]here is nothing here but 'speculative assertions as to the existence of documents,' which 'do not suffice to sustain a motion for spoliation of evidence.'" (quoting Tri-County Motors, Inc. v. Am. Suzuki Motor Corp., 494 F. Supp. 2d 161, 177 (E.D.N.Y. 2007)).  Rather, Defendants proffer evidence that a diligent search of the records was conducted for the Colored

18

Headshots, but they could not be located; instead, a black-and-white copy of the Forward Headshot was produced. (See Sanction Opp'n at 8.) The Court agrees with Defendants that without more,[7] evidence merely being missing is not enough to "reflect either bad faith, the intentional destruction of evidence, or gross negligence." (Id. at 7 (citing Swindell Dressler Int'l Co. v. Travelers Cas. & Sur., Co., 827 F. Supp. 2d 498, 507 n.10 (W.D. Pa. 2011) ("A party's mere inability to produce copies or versions of materials that existed when the lawsuit began is not necessarily sufficient to establish sanctionable misconduct, provided that the party conducted a diligent search in response to the discovery request and produced the best evidence that it found at the time." (further citation omitted)).) Hence, at this juncture, Plaintiff has not established the Defendants had the requisite "culpable state of mind" to support the imposition of spoliation sanctions. See Estate of Jackson v. County of Suffolk, No. 12-CV-1455, 2014 WL 1342957, at *11 (E.D.N.Y. Mar. 31, 2014) ("Even where the preservation obligation has been breached, sanctions will only be warranted if the party responsible for the loss had a sufficiently culpable state of mind." (quoting In re WRT Energy Sec. Litig., 246 F.R.D. 185, 195 (S.D.N.Y. 2007)).

---

[7] The Court notes that, other than Plaintiff's conjecture, it is unknown whether a Colored Profile Headshot ever existed.

As to relevance, in the context of addressing the "culpable state of mind" prong of the spoliation sanctions analysis, Plaintiff summarily assets: "Even were these items' relevance, and the prejudice from their absence, not so plain, their relevance and the prejudice from their absence could be presumed under the circumstances at bar." (See Sanctions Support Memo at 11.) Plaintiff also baldly claims he will suffer immense prejudice "[w]ithout the post-incident color photo (and the missing post-incident profile photos) showing that his eye was red, [because] it becomes simply Plaintiff's lone word against the Corrections Officer Defendants' words." (Id. at 10.) The Court is unpersuaded. As the Defendants assert, "it is far from a foregone conclusion that the [Colored Headshots] would reveal any trauma to Plaintiff's [left] eye,", especially since "none of the medical evaluations performed in the aftermath of the incident indicate that Plaintiff's eye was damaged in any way". (Sanctions Opp'n, ECF No. 146-6, at 10 (citing Sept. 28, 2014 Urgent Care Assessment form, Ex. B, ECF No. 146-2; Sept. 28, 2014 Post Use-of-Force form, Ex. C, ECF No. 146-3).) Even if that were not the case, Plaintiff has failed to articulate how the Colored Headshots would demonstrate his alleged eye injury was caused by any individual Defendant.

Declining to recommend the requested sanctions of striking Defendants' Answer or issuing an adverse inference jury

instruction, Magistrate Judge Shields was well within her discretion to also deny Plaintiff's request for attorney's fees. See Fujitsu, 247 F.3d at 436. Indeed, in the absence of finding grounds to impose other sanctions, there was no reason to award attorneys' fees as a sanction.

In sum, considering (1) Magistrate Judge Shields' intimate knowledge of this case, (2) the underlying amendment motion papers, and (3) Plaintiff's objections and Defendants' opposition thereto, this Court is not left with the definite and firm conviction that a mistake has been committed by Magistrate Judge Shields in denying the Spoliation Sanction Motion or that said ruling is contrary to law. Magistrate Judge Shields' No-Sanction Order was properly based upon the record and well within her discretion. Cf., e.g., Kang v. Perri, No. 20-CV-0746, 2021 WL 4487876, at *6 (E.D.N.Y. Sept. 30, 2021) (quoting Fujitisu, 247 F.3d at 436). To the extent not directly addressed, the Court has considered the Plaintiff's remaining arguments and finds them to be without merit. Accordingly, the No-Sanctions Order is affirmed.

* * *

In conjunction with its inherent authority to manage its dockets and courtroom with a view toward the efficient and expedient resolution of cases, see Dietz v. Bouldin, 136 S. Ct. 1885, 1892 (2016), the Court makes the following observations and provides the following directives. Magistrate Judge's additional

finding that "Plaintiff has made a sufficient showing to explore at trial whether the Defendants had a policy with respect to the taking of pictures of inmates that was violated in this action," warrants interpreting the No-Sanctions Order as being a denial of the Spoliation Motion without prejudice to renew after the record has been fully developed at trial.  It is so deemed, especially as this Court agrees with the Magistrate Judge's finding of a sufficient showing.  If Plaintiff chooses to pursue this line of questioning at trial, it will be subject to the Court's evidentiary rulings.  Moreover, if such evidence is presented to the jury, jurors (1) may assign to it the weight they deem appropriate, and (2) will assess the credibility of the witnesses testifying about it.  Thus, for clarity:  Plaintiff is not precluded from seeking an adverse inference jury instruction regarding the lack of Colored Headshots, if warranted.  Cf. Swindell, 827 F. Supp. 2d at 507 (finding "that a spoliation sanction in the form of a spoliation inference instruction is essentially an evidentiary ruling" which "rest in the sound discretion of the court" and that "pretrial rulings regarding evidentiary questions should rarely be granted" (cleaned up; citations omitted)).


[Remainder of Page Intentionally Left Blank.]

CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that:

A. As to Plaintiff's Rule 72 Objections to the No-Amend Order:

  1. The Objections are OVERRULED;

  2. The No-Amend Order is AFFIRMED; and

  3. Plaintiff's Motion for Reconsideration (ECF No. 138) is DENIED; and

B. As to Plaintiff's Rule 72 Objections to the No-Sanctions Order:

  1. The Objections are OVERRULED;

  2. The No-Sanctions Order is AFFIRMED; and

  3. Plaintiff's Motion for Reconsideration (ECF No. 155) is DENIED.

    **IT IS FURTHER ORDERED** that the Clerk of Court is directed to amend the case caption in this action as stated herein (see supra at note 1).

**SO ORDERED.**

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:    February _2_, 2022
           Central Islip, New York